# FOR PUBLICATION

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

ERNEST LEE BRAZZEL,
          *Petitioner-Appellant,*

v.

STATE OF WASHINGTON,
          *Respondent,*

v.

ALICE PAYNE,
          *Respondent-Appellee.*

No. 05-36145

D.C. No.
CV-04-05892-RBL

ORDER
AMENDING
OPINION AND
AMENDED
OPINION

Appeal from the United States District Court
for the Western District of Washington
Ronald B. Leighton, District Judge, Presiding

Argued and Submitted
December 6, 2006—Seattle, Washington

Filed April 12, 2007
Amended June 22, 2007

Before: Betty B. Fletcher and M. Margaret McKeown,
Circuit Judges, and William W Schwarzer,* District Judge.

Opinion by Judge McKeown

---

*The Honorable William W Schwarzer, Senior United States District
Judge for the Northern District of California, sitting by designation.

---

**COUNSEL**

Russell V. Leonard, Federal Public Defender, Tacoma, Washington, for the appellant.

Gregory J. Rosen, Assistant Attorney General, Olympia, Washington, for the appellee.

---

**ORDER**

Judge McKeown votes to deny the petition for rehearing en banc and Judge B. Fletcher and Judge Schwarzer so recommend. The full court has been advised of the petition for rehearing en banc and no judge has requested a vote on whether to rehear the matter en banc. Fed. R. App. P. 35. The petition for rehearing en banc is denied.

The Opinion filed on April 12, 2007 is amended as follows:

On slip Opinion page 4235, line 15, insert the following text: <"a reliable inference of prejudice." *Mathews*, 475 U.S. at 246.> to replace <inferences of prejudice.>

On slip Opinion page 4235, line 26, insert the following text after the sentence ending in the word <charge.> and before the sentence beginning with the word <Therefore>: <Absent the murder charge, the landscape of the trial would have been significantly different.>

On slip Opinion page 4235, line 26, insert the following text after the word <Therefore,> and before <Brazzel>: <there

is a "reliable" inference that> and delete the word <well>. No further petitions shall be entertaned.

---

**OPINION**

McKEOWN, Circuit Judge:

In this 28 U.S.C. § 2254 habeas appeal, Ernest Lee Brazzel challenges, as a violation of the Double Jeopardy Clause, his retrial on an attempted murder charge, after his first jury remained silent on that charge, and convicted him of a lesser alternative offense. Two different juries have now convicted Brazzel of the lesser offense, first degree assault. Both juries failed to reach the alternate and more serious charge of attempted murder. The framework for our analysis of this double jeopardy challenge is found in two Supreme Court cases—*Green v. United States*, 355 U.S. 184 (1957), and *Price v. Georgia*, 398 U.S. 323 (1970).

In *Green*, the Supreme Court explained the doctrine of implied acquittal: when a jury convicts on a lesser alternate charge and fails to reach a verdict on the greater charge—without announcing any splits or divisions and having had a full and fair opportunity to do so—the jury's silence on the second charge is an implied acquittal. 355 U.S. at 191. A verdict of implied acquittal is final and bars a subsequent prosecution for the same offense. *See id.* Under *Price*, putting the defendant in jeopardy a second time is not necessarily harmless error or moot, even if the defendant is only convicted of the lesser crime, because "[t]he Double Jeopardy Clause . . . is cast in terms of the risk or hazard of trial and conviction, not of the ultimate legal consequences of the verdict." 398 U.S. at 331.

Although the Washington Court of Appeals assumed that the lack of a verdict on the attempted murder charge follow-

ing Brazzel's first trial was an implied acquittal, the state court grounded its denial of Brazzel's double jeopardy claim in a mootness or harmless error analysis in contravention of *Price*. Accordingly, because the decision was contrary to clearly established U.S. Supreme Court precedent, we reverse with instructions to grant the writ of habeas corpus. As did the Court in *Price*, we remand the case to enable the Washington courts "to resolve the issues pertaining to petitioner's retrial, if any such retrial is to be had." *Id.* at 332.

## BACKGROUND

Ernest Brazzel was charged with three counts related to the repeated assault of his girlfriend in 1997 and 1998. Count I alleged attempted first degree murder or, in the alternative, first degree assault, committed between May 10 and May 16, 1998. Count II alleged second degree assault, committed between May 4 and May 11, 1998. Count III alleged second degree assault, committed between April 15 and April 22, 1998.

The jury convicted Brazzel of first degree assault on Count I, second degree assault on Count II, and second degree assault on Count III. On Count I, the jury remained silent on the first degree attempted murder charge, leaving the verdict form blank. During the jury poll, at the conclusion of their deliberations, the jurors did not claim to be hung or announce any splits or divisions. The state did not request that the jury be declared hung as to the attempted murder count; nor did the state take any other post-verdict action on the attempted murder charge. The trial judge discharged the jury, taking as final the convictions on the assault counts, and sentenced Brazzel to 456 months in prison.

After Brazzel appealed, the prosecutor conceded that a significant jury instruction unrelated to this appeal was erroneous. The case was remanded for a new trial.

The prosecutor refiled the same alternative charge as the original Count I: Attempted Murder in the First Degree "and in the alternative" Assault in the First Degree, and the various other assault charges. Brazzel moved to dismiss the attempted murder allegation on double jeopardy grounds. In response, the government argued that based on the phrasing of the first set of jury instructions, the jury's silence indicated a hung jury and not an implied acquittal.

The relevant portion of the jury instruction reads as follows:

> When completing the verdict forms, you will first consider the crime of ATTEMPTED MURDER IN THE FIRST DEGREE as charged in Count I. If you unanimously agree on a verdict, you must fill in the blank provided in verdict form A the words "not guilty" or the word "guilty," according to the decision you reach. If you cannot agree on a verdict, do not fill in the blank provided in Verdict Form A.

> If you find the defendant guilty on verdict form A, do not use verdict form B. If you find the defendant not guilty of the crime of ATTEMPTED MURDER IN THE FIRST DEGREE, or if after full and careful consideration of the evidence you cannot agree on that crime, you will consider the alternative crime of ASSAULT IN THE FIRST DEGREE as charged in Count I.

Referencing this instruction, the government posited that the jury must not have "unanimously" agreed as to the attempted murder charge, therefore leaving the form blank, which resulted in a hung jury and a mistrial on that charge, and permitted a retrial for attempted murder.

Brazzel countered that the record provided no indication or evidence that the jury hung or that a mistrial had been

declared with respect to the attempted murder charge. He acknowledged that the instruction stated that if the jury could not agree they should leave the form blank and convict on the lesser alternate count, but argued that a mere inability to agree with the option of compromising on a lesser alternate offense, without more, does not rise to the level of a hung jury permitting retrial. After the second trial judge rejected Brazzel's motion to bar retrial on the attempted murder charge, Brazzel stood trial a second time for attempted murder. Once again, the jury did not convict Brazzel of that charge, leaving the relevant verdict form blank. The jury was similarly instructed to proceed to the assault charge if they could not agree on the attempted murder charge. In a reprise of the first trial, the jury convicted Brazzel of first degree assault and the other assault counts. Brazzel was sentenced to 240 months in prison.

Brazzel exhausted his double jeopardy claim in state court in a pro se supplemental brief to the Washington Court of Appeals. In an unpublished opinion, the court concluded that any double jeopardy violation was "moot" since Brazzel was "essentially acquitted" of first degree murder following the second trial:

> Relying on the double jeopardy clause, Brazzel claims pro se that he should not have been tried for attempted first degree murder in the second trial, given that the jury in the first trial acquitted him of that crime. If his claim is valid, we should dismiss the charge of first degree murder. Yet that has already been done, because *he has essentially been acquitted of that charge*. Assuming that his contention was valid earlier, it is moot now.

*Washington v. Brazzel*, No. 27877-4-II (Wash. Ct. App. filed Sept. 30, 2003) (Emphasis added).

In essence, the Washington Court of Appeals reasoned that the double jeopardy violation was harmless error because the

jury's silence on the attempted murder charge in the second case amounted to an implied acquittal. The jury's silence, which the court of appeals treated as an implied acquittal in the second trial, was identical to the jury's silence following the first trial.

After the Washington Court of Appeals denied relief, Brazzel moved for discretionary review by the Washington Supreme Court, again claiming a double jeopardy violation. His motion was denied without comment. The United States Supreme Court denied his petition for writ of certiorari. *Brazzel v. Washington*, 543 U.S. 1004 (2004) (mem.).

Brazzel filed a timely federal habeas petition in the United States District Court for the Western District of Washington. The district court, upon the recommendation of the magistrate judge, dismissed Brazzel's double jeopardy claim. The magistrate judge reasoned that assault is not a lesser included offense of attempted murder, and that the jury's failure to convict Brazzel of the alternative murder charge did not amount to an implied acquittal.

## ANALYSIS

We review *de novo* the district court's decision to dismiss Brazzel's federal habeas petition. *Lockhart v. Terhune*, 250 F.3d 1223, 1228 (9th Cir. 2001). Under the Anti-Terrorism and Effective Death Penalty Act of 1996 (AEDPA), we may not grant relief to a state habeas petitioner unless the state courts' failure to grant relief was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1). "In a habeas appeal, we review the last reasoned decision in the state court system," here the Washington Court of Appeals' determination that the double jeopardy violation was "moot." *Riggs v. Fairman*, 399 F.3d 1179, 1182 (9th Cir. 2005) (citing *Robinson v. Ignacio*, 360 F.3d 1044, 1055 (9th Cir. 2004)). "We have relaxed AEDPA's

strict standard of review when the state court reaches a decision on the merits but provides no reasoning to support its conclusion. Under such circumstances, we independently review the record to determine whether the state court clearly erred in its application of Supreme Court law." *Pirtle v. Morgan*, 313 F.3d 1160, 1167 (9th Cir. 2002).

## I.  THE DOUBLE JEOPARDY LANDSCAPE

**[1]** The Fifth Amendment's Double Jeopardy Clause prohibits retrial after an acquittal, whether express or implied by jury silence. *See Green*, 355 U.S. at 191. An implied acquittal occurs when a jury returns a guilty verdict as to a lesser included or lesser alternate charge, but remains silent as to other charges, without announcing any signs of hopeless deadlock. *See id.* at 191, 194. As early as 1898, the Supreme Court announced that jury silence is tantamount to acquittal, explaining: "where a jury, although convicting as to some, are silent as to other, counts in an indictment, and are discharged without the consent of the accused, . . . the effect of such discharge is 'equivalent to acquittal' . . . ." *Selvester v. United States*, 170 U.S. 262, 269 (1898).

**[2]** When, as here, the defendant's conviction is overturned due to a jury instruction error, the government may retry the defendant as to the charge of conviction, but not for other charges of which the first jury impliedly or expressly acquitted him. *See, e.g.*, *Ball v. United States*, 163 U.S. 662, 672 (1896) ("[A] defendant who procures a judgment against him upon an indictment to be set aside may be tried anew upon the same indictment, or upon another indictment, for the same offense of which he had been convicted."). In *Green*, the Supreme Court made plain the prohibition on retrial following jury silence:

> [H]ere, the jury was dismissed without returning any express verdict . . . and without Green's consent. . . . [U]nder established principles of former jeopardy

> . . . Green's jeopardy for first degree murder came to an end when the jury was discharged so that he could not be retried for that offense. . . . [T]his case can be treated no differently, for purposes of former jeopardy, than if the jury had returned a verdict which expressly read: "We find the defendant not guilty of murder in the first degree but guilty of murder in the second degree.

355 U.S. at 191 (citations omitted). Then, in *Price*, the Court reaffirmed its "refus[al] to rule that jeopardy for an offense continues after an acquittal, whether that acquittal is express or implied by a conviction on a lesser included offense when the jury was given a full opportunity to return a verdict on the greater charge." 398 U.S. at 329.

In contrast to an implied acquittal, retrial is permitted where there is a mistrial declared due to the "manifest necessity" presented by a hung jury. *See United States v. Perez*, 22 U.S. 579, 580 (1824). A hung jury occurs when there is an irreconcilable disagreement among the jury members. A "high degree" of necessity is required to establish a mistrial due to the hopeless deadlock of jury members. *See Arizona v. Washington*, 434 U.S. 497, 506 (1978). The record should reflect that the jury is "genuinely deadlocked." *Richardson v. United States*, 468 U.S. 317, 324-25 (1984) (explaining that when a jury is genuinely deadlocked, the trial judge may declare a mistrial and require the defendant to submit to a second trial); *see also Selvester*, 170 U.S. at 270 ("But if, on the other hand, after the case had been submitted to the jury they reported their inability to agree, and the court made record of it and discharged them, such discharge would not be equivalent to an acquittal, since it would not bar the further prosecution.").

"The trial judge's decision to declare a mistrial when he considers the jury deadlocked is . . . accorded great deference by a reviewing court." *Arizona v. Washington*, 434 U.S. at 510; *United States v. Salvador*, 740 F.2d 752, 755 (9th Cir.

1984) (citations omitted). When a judge does not find a mistrial to be of manifest necessity in his or her own judgment, "the prosecutor must shoulder the burden of justifying the mistrial if he is to avoid the double jeopardy bar. His burden is a heavy one. The prosecutor must demonstrate 'manifest necessity' for any mistrial declared over the objection of the defendant." *Arizona v. Washington*, 434 U.S. at 505.

**[3]** Contrary to the impression of the magistrate judge, for double jeopardy to attach, there is no explicit requirement that the charged offenses be greater and lesser included offenses. Rather, the Supreme Court is clear that a defendant may not be retried after an implied acquittal of *any* offense. *See, e.g.*, *Green*, 355 U.S. at 191, 194. The defining fact is that "it is a distinct and different offense":

> It is immaterial whether [it] . . . is a lesser offense included . . . or not. The vital thing is that it is a *distinct and different offense*. If anything, the fact that it cannot be classified as "a lesser included offense" . . . buttresses our conclusion . . . . American courts have held with uniformity that where a defendant is charged with two offenses, neither of which is a lesser offense included within the other, and has been found guilty on one but not on the second he cannot be tried again on the second even though he secures reversal of the conviction and even though the two offenses are related offenses charged in the same indictment.

*Id.* at 194 (citation omitted) (emphasis added).

## II.   THE STATE COURT'S ASSUMPTION OF IMPLIED ACQUITTAL

In deciding Brazzel's double jeopardy claim the Washington Court of Appeals treated the jury's silence as "essentially" an acquittal. Addressing Brazzel's claim that he had been acquitted of murder in the first trial, the court stated: "If his

claim is valid, we should dismiss the charge of first degree murder. Yet that has already been done because he has essentially been acquitted of that charge." The jury's silence following the first trial was identical to that following the second, indicating that the Washington Court of Appeals understood the earlier jury's silence as "essentially" an acquittal as well. The court of appeals assumed, in effect, that the jury's silence on the attempted murder charge was not evidence that the jury hung; had their silence resulted in a hung jury, then there unquestionably would have been no legitimate double jeopardy claim and no need to consider the prejudicial effect of the jury's silence.

Under AEDPA, we ordinarily defer to the state court's determination of a mixed question of law and fact such as this unless it is contrary to or an unreasonable application of Supreme Court law. *See* 28 U.S.C. § 2254(d)(1). We apply a less stringent standard of review when the state court reaches a decision on the merits but does not supply reasoning for its decision. *Pirtle*, 313 F.3d at 1167. Under such circumstances, we review the record to determine if there was clear error. *Id.* If the state court has not addressed a constitutional issue at all, then our review is de novo. *Id.*; *accord Menendez v. Terhune*, 422 F.3d 1012, 1026 (9th Cir. 2005).

The Washington Court of Appeals reached the constitutional issue presented by Brazzel's double jeopardy challenge and treated the jury's silence following Brazzel's first trial as an implied acquittal, but held it was moot due to the subsequent implied acquittal. Because the state court did not provide any reasons for its determination, our review is for clear error. *See Pirtle*, 313 F.3d at 1167. We note, however, that if we treat the state court finding with complete AEDPA deference, the result is the same.

**[4]** The state court did not clearly err when it treated the first jury's silence as an implied acquittal. Although the Washington Court of Appeals cited no state precedent directly

on point, under then-governing Washington law, Brazzel's
retrial for the greater offense following conviction only on the
lesser alternative offense was probably impermissible. *See,
e.g.*, *State v. Brown*, 903 P.2d 459, 463 (Wash. 1995) (holding
that following the jury's inability to agree on a greater charge,
"[d]ue to double jeopardy concerns, the defendant cannot be
retried on charges greater than the charge for which he was
convicted.") (citations omitted).[1] The Washington Supreme
Court has identified avoidance of hung juries as one of the
purposes of the "unable to agree" instruction, suggesting that
a conviction for the lesser charged offense pursuant to such
instruction does not render the "inability to agree" on the
greater charge jury hanging. *See State v. Labanowski*, 816
P.2d 26, 34 (Wash. 1991) (noting that unable to agree instruc-

---

[1]The Washington Supreme Court recently decided two cases with fac-
tual circumstances more closely related to Brazzel's. In *State v. Linton*,
132 P.3d 127 (Wash. 2006), which failed to garner a majority opinion, the
lead opinion held: "Where an unable to agree instruction is used which
allows the jury to move on to a lesser included offense when it acquits *or*
is unable to agree on the greater charge, and the jury does move on with-
out entering a verdict, the jury will necessarily remain 'silent' on the
greater offense. . . . Under the implied acquittal doctrine then, the judge
would have had to conclude that the jury implicitly acquitted Linton of
first degree assault." *Id.* at 133. Only several months later, the court
changed course and in *State v. Ervin*, 147 P.3d 567 (Wash. 2006), held
that where an unable to agree instruction is given "the blank verdict forms
[on the greater offense] indicate . . . that the jury was unable to agree." *Id.*
at 572. The court permitted retrial for the greater offense. *Id.* at 573. Yet,
in a puzzling footnote, the court stated: "This is not to decide, however,
that the jury's inability to agree on the greater charges is the equivalent of
a mistrial on those charges. Unable to agree instructions instruct the jury
to end deliberations on a greater charge and move on to a lesser charge
once disagreement on the greater has been established. Comparatively,
state and federal jurisprudence establishes that a jury must be 'genuinely
deadlocked' before a mistrial can be declared." *Id.* at 572 n.10 (citations
omitted). In any event, the Washington Court of Appeals did not have the
benefit of these cases in deciding Brazzel's appeal, and could only have
been influenced by existing state precedent prohibiting retrial for a greater
offense after reversal of a conviction for a lesser offense charged in the
same count. *See Brown*, 903 P.2d at 463.

tions serve a variety of purposes, among them reducing the incidence of hung juries).

No Supreme Court case addresses precisely such an "unable to agree" jury instruction, so the state court's treatment of the jury's silence cannot be characterized as "contrary to" federal law. Under federal law, the Washington Court of Appeals' determination was also not unreasonable. Consistent with Supreme Court precedent, the state court could reasonably conclude that the inability of Brazzel's first jury, as instructed, "to reach [a] unanimous decision after full and careful deliberation on the charge of attempted murder in the first degree" did not by itself result in a hung jury and "mistrial" by "manifest necessity" on the attempted murder charge, but rather was an implied acquittal. Assuming, as we must, that the jury followed the instructions, we know the jury did not *actually* acquit Brazel on the attempted murder charge because it did not fill in the box with a "not guilty" notation. Instead, the jury "[could] not agree" on that charge, remained "silent," and convicted of a lesser alternative offense. Under *Green* and *Price*, "petitioner's jeopardy on the greater charge had ended when the first jury 'was given a full opportunity to return a verdict' on that charge and instead reached a verdict on the lesser charge." *Price*, 398 U.S. at 329 (quoting *Green*, 355 U.S. at 191).

Following Brazzel's first trial, the judge polled the jury asking two questions: "Is this your verdict, is this the way you individually, personally voted" and "Is this the verdict of the jury, meaning is this the verdict of all twelve of you?" Each juror responded in turn, "Yes" or "Yes, it is."

No inquiry was made to determine whether the jury had "genuinely deadlocked" or simply moved to the lesser alternative assault charge as a compromise. Notably as well, after Brazzel's first trial, the government did not construe the jury's silence as "hanging" or seek a retrial as to that count, even

though the state now argues the blank form should be construed as a hopeless deadlock.

Under federal law, an inability to agree with the option of compromise on a lesser alternate offense does not satisfy the high threshold of disagreement required for a hung jury and mistrial to be declared. *See, e.g.*, *Arizona v. Washington*, 434 U.S. at 509. The Supreme Court has characterized disagreement sufficient to warrant a mistrial as "hopeless" or "genuine" "deadlock." *Id.* ("[T]he trial judge may discharge a genuinely deadlocked jury and require the defendant to submit to a second trial."). Genuine deadlock is fundamentally different from a situation in which jurors are instructed that if they "cannot agree," they may compromise by convicting of a lesser alternative crime, and they then elect to do so without reporting any splits or divisions when asked about their unanimity.

In contrast, in *Ervin*, where similar "unable to agree" instructions were used, the jury deliberated for five weeks, reporting repeatedly in notes to the court that it was unable to reach a unanimous verdict:

> The jury has continued to deliberate according to the court's direction. We are still unable to reach a unanimous verdict on any of the three charges . . . . Since our last inquiry to the court, there has been no movement toward a unanimous verdict on any of the counts. We believe that additional deliberation would not result in a unanimous verdict on any of the three counts. We have stopped deliberations and asked for the court's direction.

147 P.3d at 568. Ultimately, the jury in *Ervin* left two verdict forms blank pursuant to the "unable to agree" instructions and the Washington Supreme Court held that the blank verdict forms did not prohibit retrial. *See id.* at 572.

In *Salvador*, 740 F.2d at 754 (9th Cir. 1984), after deliberating for "approximately nine hours," on the second day of deliberations, the jury sent the judge a note stating: "The jury is not able to reach a decision on either defendant. We are deadlocked." The judge instructed the jury to continue deliberating and after an additional four hours and overnight recess the jury foreman sent a second note:

> We are unable to reach a decision. The problem is a reliance on an answer arrived at through religious inspiration, and an unwillingness to move from that decision and base a decision on the evidence. The evidence has been thoroughly examined. Those basing their decision on the evidence are unwilling to change.

*Id.* After reading this second note, the court discharged the jury and declared a mistrial, over the defendants' objections. *Id.* This court held that a mistrial was warranted and that "the requisite 'manifest necessity' exist[ed] to declare a mistrial." *Id.* at 755.

The Eighth Circuit addressed a similar circumstance in *United States v. Bordeaux*, 121 F.3d 1187 (8th Cir. 1997). The jury that was given an "unable to agree" instruction wrote on that instruction "[a]fter all reasonable efforts, we, the jury, were unable to reach a verdict on the charge 'Attempted Aggravated Sexual Abuse.' " *Id.* at 1192. The trial judge declared a mistrial and retrial on that charge was upheld as permissible. *See id.* at 1193.

**[5]** As compared to the evidence of jury deadlock in *Ervin*, *Salvador*, and *Bordeaux*, nothing in the record of Brazzel's case indicates the jury's inability to agree was hopeless or irreconcilable—a manifest necessity permitting a retrial for attempted murder. In contrast, following Brazzel's first trial, the jury offered no indication of any inability to reach a verdict beyond what may be deduced from the jury instruction

itself and the trial judge did not declare a mistrial. "[T]here are degrees of necessity and we require a 'high degree' before concluding that a mistrial is appropriate." *Arizona v. Washington*, 434 U.S. at 506.

**[6]** The purpose of the rule permitting retrial if a jury hangs is to accord "recognition to society's interest in giving the prosecution one complete opportunity to convict those who have violated its laws." *Id.* at 509. Here, the prosecution was given one complete opportunity to convict Brazzel of attempted first degree murder. The jury declined to do so. In *Green*, the Supreme Court rejected the proposition that "in order to secure the reversal of an erroneous conviction of one offense, a defendant must surrender his valid defense of former jeopardy not only on that offense but also on a different offense for which he was not convicted and which was not involved in his appeal." 355 U.S. at 193. The state court's treatment of the jury's "silence" following Brazzel's first trial as an implied acquittal is a permissible application of governing law.

## III.    THE STATE COURT'S FINDING OF MOOTNESS

**[7]** Following its assumption that the jury's silence on the attempted murder charge was "essentially" an acquittal, the state court concluded that Brazzel's double jeopardy claim was "moot" because he was "essentially acquitted" of attempted murder following the second trial. The Supreme Court has held that a double jeopardy violation is not to be readily disposed of as "moot" or harmless:

> The Double Jeopardy Clause . . . is cast in terms of the risk or hazard of trial and conviction, not of the ultimate legal consequences of the verdict. To be charged and to be subjected to a second trial for first-degree murder is an ordeal not to be viewed lightly. Further, and perhaps of more importance, we cannot determine whether or not the murder charge against

petitioner induced the jury to find him guilty of the less serious offense of voluntary manslaughter rather than to continue to debate his innocence.

*Price*, 398 U.S. at 331. In other words, acquittal (even if implied) upon retrial of the greater offense does not by itself render the double jeopardy violation harmless.

**[8]** Because Brazzel's circumstances are similar to those in *Price*, Brazzel was twice put in jeopardy for attempted murder. The circumstance of a retrial on the murder charge should not have been characterized as moot. As in *Price*, "we cannot determine whether or not the murder charge against petitioner induced the jury to find him guilty of the [first degree assault] rather than to continue to debate his innocence." *Id.* In this respect, the Washington Court of Appeals' decision finding any error "moot" was contrary to clearly established Supreme Court precedent.

The Supreme Court has distinguished *Price* from cases in which the jury did not acquit the defendant of the greater offense, but found the defendant guilty of the greater offense and the alternative lesser offense by implication. Under such circumstances, the burden rests on the defendant to establish that being tried twice for the greater offense tainted the conviction of the lesser offense. *Morris v. Mathews*, 475 U.S. 237, 246 (1986) ("*Price* did not impose an automatic retrial rule . . . . Rather, the Court relied on the likelihood that . . . the charge of the greater offense for which the jury was unwilling to convict also made the jury less willing to consider the defendant's innocence on the lesser charge. . . . The jury did not acquit Mathews of the greater offense . . . but found him guilty of that charge and, *a fortiori*, of the lesser offense of murder as well.").

Unlike in *Matthews*, Brazzel was impliedly acquitted at his second trial of the greater offense and convicted of the lesser alternative charge. Given the similarity of the facts here to

*Price*, and the clear differences between Brazzel's second trial and the challenged result in *Matthews*, the analysis in *Price* controls.

**[9]** Even applying *Matthews*, however, Brazzel has come forward with "a reliable inference of prejudice." *Mathews*, 475 U.S. at 246. He contends that the jury may have been induced to return a verdict of guilty as to first degree assault because of the light in which the attempted murder charge cast the domestic violence incidents. Without the presence of the greater alternative offense, attempted first degree murder, the jury may have convicted him only of the two second degree assault counts. Although the evidence as characterized by the Washington Court of Appeals is more than sufficient to satisfy the elements of first degree assault, the same evidence is also sufficient to support a conviction for attempted first degree murder, and two juries declined to convict Brazzel of that charge. Absent the murder charge, the landscape of the trial would have been significantly different. Therefore, there is a "reliable" inference that Brazzel may have been prejudiced by the presence of the greater, jeopardy barred charge at his second trial, and the Washington Court of Appeals' determination that Brazzel's double jeopardy claim was "moot" contravened clearly established Supreme Court precedent.

**REVERSED** with instructions to grant the writ of habeas corpus, and **REMANDED** to the state to determine what non-jeopardy barred retrial, if any, is to be had.