[No. 76802-1.  En Banc.]

Argued March 20, 2008.    Decided February 12, 2009.

THE STATE OF WASHINGTON, *Petitioner*, v. CARISSA MARIE DANIELS, *Respondent*.

*Gerald A. Horne, Prosecuting Attorney,* and *Kathleen Proctor, Deputy,* for petitioner.

*Clayton R. Dickinson,* for respondent.

¶1  C. JOHNSON, J. — An opinion in this case was reported in *State v. Daniels,* 160 Wn.2d 256, 156 P.3d 905 (2007). We granted a motion for reconsideration, heard oral argument, and now adhere to our prior published opinion.

OWENS, FAIRHURST, and J.M. JOHNSON, JJ., concur.

¶2  MADSEN, J. (concurring) — The Ninth Circuit's decision in *Brazzel v. Washington,* 491 F.3d 976 (9th Cir. 2007) provides an interesting perspective, but I do not believe that it compels a different result upon reconsideration of this case. The jury instruction at issue works to the advantage of the defendant and the State by permitting a conviction on a lesser charge if the jury cannot agree on the greater. But the fact that the instruction was followed does not lead to the conclusion that double jeopardy principles bar retrial on the homicide by abuse charge.

¶3  The defendant has the " 'valued right to have his trial completed by a particular tribunal.' " *Richardson v. United States,* 468 U.S. 317, 325, 104 S. Ct. 3081, 82 L. Ed. 2d 242 (1984) (quoting *Wade v. Hunter,* 336 U.S. 684, 688-89, 69 S. Ct. 834, 93 L. Ed. 974 (1949)). The manner in which a jury can proceed given the instruction in this case is predictable and readily apparent to defendant and State alike. By agreeing to this instruction, the defendant also agreed to the unsurprising course her jury might follow in accord with

the instruction. She is therefore in no position to complain if her jury failed to enter a verdict on the greater charge and a different jury must complete her trial following reversal of her conviction for second degree murder.

¶4 I concur in the result reached in the lead opinion.

¶5 SANDERS, J. (dissenting) — The lead opinion invites me to dissent to my own opinion, an invitation I necessarily accept. "Wisdom too often never comes, and so one ought not to reject it merely because it comes late." *Henslee v. Union Planters Nat'l Bank & Trust Co.*, 335 U.S. 595, 600, 69 S. Ct. 290, 93 L. Ed. 259 (1949) (Frankfurter, J., dissenting).

## FACTS

¶6 On July 9, 2000, 17-year-old Carissa Daniels gave birth to her son, Damon. Nine weeks later Damon was dead. Daniels was subsequently charged with homicide by abuse and felony murder in the second degree—domestic violence. The second degree felony murder charge was predicated on either second degree assault or first degree criminal mistreatment.[1] Daniels faced a jury trial on these charges.

¶7 At the close of evidence the jury was given two verdict forms: form A pertained to the homicide by abuse charge and form B pertained to the second degree felony murder charge. The jury was instructed to fill in guilty or not guilty on form A if it unanimously agreed to the charge of homicide by abuse, otherwise it should leave this form blank. The jury was instructed to consider the second degree felony

---

[1] The trial court judge suppressed statements Daniels made to law enforcement before she was given *Miranda* warnings. *Miranda v. Arizona*, 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966). We upheld suppression of the statements, and the parties have not asked us to reconsider that portion of our prior decision. *See State v. Daniels*, 160 Wn.2d 256, 266-67, 156 P.3d 905 (2007).

murder charge and use form B if it found Daniels not guilty of homicide by abuse or could not agree on that charge.[2]

¶8 The jury left form A blank and used form B to find Daniels guilty of murder in the second degree. Daniels appealed, arguing our decision in *Andress* precluded use of assault as a predicate offense for second degree felony murder. *State v. Daniels*, 124 Wn. App. 830, 834, 103 P.3d 249 (2004) (citing *In re Pers. Restraint of Andress*, 147 Wn.2d 602, 56 P.3d 981 (2002)). The Court of Appeals reversed Daniels's conviction for felony murder as it may have been predicated on assault and remanded for a new trial. The Court of Appeals also held the State could not retry her for homicide by abuse because the jury's silence on that charge acted as an implied acquittal. After the Court of Appeals published its opinion, we decided both *Linton*[3] and *Ervin*,[4] further elaborating on this issue.

¶9 The State petitioned this court for review, seeking to retry Daniels on homicide by abuse. Daniels cross-petitioned, asking this court to determine whether she may be retried for second degree felony murder predicated on criminal mistreatment.[5] We accepted review, heard argument, and published an opinion allowing for retrial on homicide by abuse and second degree murder predicated on criminal mistreatment. *State v. Daniels*, 160 Wn.2d 256, 156 P.3d 905 (2007). Shortly thereafter, the Ninth Circuit

---

[2] Jury instruction 23 reads in part:

When completing the verdict forms, you will first consider the crime of homicide by abuse as charged. If you unanimously agree on a verdict, you must fill in the blank provided in verdict form A the words "not guilty" or the word "guilty," according to the decision you reach. If you cannot agree on a verdict, do not fill in the blank provided in Verdict Form A.

If you find the defendant guilty on verdict form A, do not use verdict form B. If you find the defendant not guilty of the crime of homicide by abuse, or if after full and careful consideration of the evidence you cannot agree on that crime, you will consider the alternatively charged crime of murder in the second degree. . . .

[3] *State v. Linton*, 156 Wn.2d 777, 132 P.3d 127 (2006).

[4] *State v. Ervin*, 158 Wn.2d 746, 147 P.3d 567 (2006).

[5] No party appealed the reversal of Daniels's felony murder conviction based on *Andress*, 147 Wn.2d 602.

Court of Appeals published *Brazzel v. Washington*, 491 F.3d 976 (9th Cir. 2007), which considered the same question but reached the opposite conclusion. Based in part on the Ninth Circuit's reasoning in *Brazzel*, Daniels filed a motion for reconsideration, which we granted.

## ANALYSIS

¶10 The Fifth Amendment to the United States Constitution declares, "[n]o person shall . . . be subject for the same offense to be twice put in jeopardy of life or limb."[6] Jeopardy in this context refers to being subject to the potential of punishment for an act, not the actual punishment for the act. *See Price v. Georgia*, 398 U.S. 323, 326, 90 S. Ct. 1757, 26 L. Ed. 2d 300 (1970) (quoting *United States v. Ball*, 163 U.S. 662, 669, 16 S. Ct. 1192, 41 L. Ed. 300 (1896)). On its face the double jeopardy clause prohibits the State from retrying an individual for an offense where jeopardy for that offense has attached and terminated.[7]

¶11 The original majority opinion erred by focusing too squarely on whether Daniels's jeopardy terminated on the homicide by abuse charge through an implied acquittal. It reasoned that an acquittal could not be implied because the jury was specifically instructed that it need not return a verdict on homicide by abuse if it was in disagreement; rather, it could proceed to return a verdict on the lesser offense of second degree felony murder. *Daniels*, 160 Wn.2d at 262-65.

¶12 The primary flaw in the original majority's analysis was its failure to perceive that under United States Su-

---

[6] Washington's Declaration of Rights contains a double jeopardy clause, Const. art. I, § 9 ("[n]o person shall . . . be twice put in jeopardy for the same offense"). The state double jeopardy clause "is given the same interpretation the Supreme Court gives to the Fifth Amendment." *State v. Gocken*, 127 Wn.2d 95, 107, 896 P.2d 1267 (1995).

[7] In a jury trial, jeopardy attaches "when the jury is empaneled and sworn." *Crist v. Bretz*, 437 U.S. 28, 38, 98 S. Ct. 2156, 57 L. Ed. 2d 24 (1978). Both parties agree that jeopardy has attached to the homicide by abuse and felony murder charges.

preme Court precedent, when an individual is forced to "run the gantlet" on a charge and the jury fails to convict, double jeopardy prohibits retrial on that charge. *Green v. United States*, 355 U.S. 184, 190, 78 S. Ct. 221, 2 L. Ed. 2d 199 (1957). Here Daniels "ran the gantlet" when she "was in direct peril of being convicted and punished" for homicide by abuse at her first trial, but "the jury refused to convict" her. *Id.* And because she "ran the gantlet" on homicide by abuse, the State may not place her in jeopardy for that crime again. *Id.* This failure in analysis led to a dual flaw in the original majority opinion. First it failed to recognize that jeopardy may terminate for reasons other than an implied acquittal. Second it failed to recognize the use of an "unable to agree" instruction standing alone is insufficient to distinguish this case from other lesser included offense cases.

*I. Jeopardy terminated when the jury was dismissed without returning a verdict on the greater offense despite having the opportunity to do so*

¶13 Jeopardy terminates when the jury is dismissed without returning a verdict despite having a full opportunity to do so. *Id.* at 184. In *Green* the Court found the Fifth Amendment prohibits a second trial on a charge where the jury fails to "return[ ] any express verdict on that charge." *Id.* at 191. The Court provided two rationales for this holding. It first applied the doctrine of implied acquittal but also enunciated a second rationale:

> Yet [the jury] was given a full opportunity to return a verdict and no extraordinary circumstances appeared which prevented it from doing so. Therefore it seems clear, under established principles of former jeopardy, that Green's jeopardy for first degree murder came to an end when the jury was discharged so that he could not be retried for that offense.

*Id.* Therefore under *Green* jeopardy terminates *either* when a jury implies an acquittal by its actions *OR* when a jury is dismissed without returning an express verdict on the charge.

¶14 In *Price*, 398 U.S. 323, the United States Supreme Court reiterated the validity of these two methods of terminating jeopardy. The Court described *Green*'s two methods of terminating jeopardy.

> First, the Court considered the first jury's verdict of guilty on the second-degree murder charge to be an "implicit acquittal" on the charge of first-degree murder. Second, and more broadly, the Court reasoned that petitioner's jeopardy on the greater charge had ended when the first jury "was given a full opportunity to return a verdict" on that charge and instead reached a verdict on the lesser charge.

*Id.* at 328-29 (quoting *Green*, 355 U.S. at 191). By reiterating both of *Green*'s rationales, the Supreme Court in *Price* firmly reaffirmed that jeopardy for an offense may terminate under either.

¶15 Here the jury *was* given a full and fair opportunity to convict Daniels of homicide by abuse in the first trial but failed to do so. Retrial on this count is therefore barred by double jeopardy,[8] absent "manifest necessity." *United States v. Perez*, 22 U.S. (9 Wheat.) 579, 6 L. Ed. 165 (1824). The most common example of "manifest necessity" to allow retrial is a mistrial based on a hung jury. *Richardson v. United States*, 468 U.S. 317, 324, 104 S. Ct. 3081, 82 L. Ed. 2d 242 (1984) ("[W]e have constantly adhered to the rule that a retrial following a 'hung jury' does not violate the Double Jeopardy Clause." (citing *Logan v. United States*, 144 U.S. 263, 297-98, 12 S. Ct. 617, 36 L. Ed. 429 (1892))).

¶16 However, a mistrial because of a hung jury is limited to situations where the jury is "genuinely deadlocked" and requires the trial court to use its discretion to balance competing rights of the defendant before declaring such. *Arizona v. Washington*, 434 U.S. 497, 509, 98 S. Ct. 824, 54 L. Ed. 2d 717 (1978). In the view of the Supreme Court, the

---

[8] The original majority incorrectly asserts *Ervin*, 158 Wn.2d 746, controls in this case. *See Daniels*, 160 Wn.2d at 264. However *Ervin* never considered, and therefore never decided, whether jeopardy terminates when a jury is dismissed without reaching a verdict. *Ervin* is neither controlling nor instructive on this issue.

trial judge's intervention and discretion to declare a mistrial based on a hung jury is required to protect two competing rights of the defendant. *Id.* First, the defendant is deprived of his " 'valued right to have his trial completed by a particular tribunal' " if the jury is dismissed before reaching a genuine deadlock. *Id.* (quoting *Wade v. Hunter*, 336 U.S. 684, 689, 69 S. Ct. 834, 93 L. Ed. 974 (1949)).[9] If a jury is not discharged after "protracted and exhausting deliberations, there exists a significant risk that a verdict may result from pressures inherent in the situation rather than the considered judgment of all the jurors." *Id.*

¶17 But in Ms. Daniels's case the trial court neither declared a mistrial nor made a finding of genuine jury deadlock. A hung jury does not result simply from an implied statement of disagreement by the jury short of "genuine deadlock." *Id.* Dismissal of the jury short of genuine deadlock deprives the defendant of his " 'valued right to have his trial completed by a particular tribunal.' " *Id.* (quoting *Wade*, 336 U.S. at 689). A simple jury instruction informing the jury it need not return a verdict on a count does not create a "manifest necessity" sufficient to overcome the constitutional prohibition against retrying a defendant. The Ninth Circuit in *Brazzel* considered this exact instruction and reasoned the "unable to agree" instruction is not the equivalent of a hung jury and therefore does not require treatment as a mistrial. *Brazzel*, 491 F.3d at 984.[10] This decision and reasoning is on point and persuasive.

---

[9] The concurrence would hold a defendant, by not objecting to the "unable to agree" instruction, forgoes a double jeopardy challenge to retrial. Concurrence at 628-29. However, the defendant's acquiescence in the jury instruction is immaterial, as this is not a matter of an improper jury instruction. In fact the "unable to agree" jury instruction is a valid statement of the law. *See State v. Labanowski*, 117 Wn.2d 405, 420, 816 P.2d 26 (1991). The issue is whether jeopardy terminates and whether retrial is therefore barred by double jeopardy. Acquiescence to a valid jury instruction does not affect this analysis.

[10] Although *Brazzel* is not, strictly speaking, controlling precedent on this court, prudence suggests this court's decisions should attempt to mirror that of the federal courts for the sake of judicial economy. We should not deny a defendant relief otherwise available by walking across the street to the federal courts.

¶18 Ironically the "unable to agree" instruction was first adopted in part to avoid problems attendant with hung juries. As the court has stated, the "unable to agree" instruction "promotes the efficient use of judicial resources . . . ." *State v. Labanowski*, 117 Wn.2d 405, 420, 816 P.2d 26 (1991). "Retrials, necessitated by hung juries, are burdensome to defendants, victims, witnesses and the court system itself." *Id.* Because a hung jury is so burdensome to the system, the court in *Labanowski* approved use of the "unable to agree" instruction in an effort to avoid the spectre of a hung jury. Under this understanding, it seems nonsensical to equate the judicially efficient "unable to agree" instruction to the hopeless deadlock required by the Supreme Court to declare a mistrial. "Genuine deadlock is fundamentally different from a situation in which jurors are instructed that if they 'cannot agree,' they may compromise by convicting of a lesser alternative crime, and they then elect to do so without reporting any splits or divisions when asked about their unanimity." *Brazzel*, 491 F.3d at 984.

¶19 Nonetheless, the original majority opinion indicates the "unable to agree" instruction allows retrial because "for over a century the United States Supreme Court has held that when a jury is unable to agree, jeopardy has not terminated." *Daniels*, 160 Wn.2d at 263 (citing *Selvester v. United States*, 170 U.S. 262, 269, 18 S. Ct. 580, 42 L. Ed. 1029 (1898)). But *Selvester* considered a scenario where the jury was dismissed following "a formal disagreement, and its entry of record." *Selvester*, 170 U.S. at 269. It did not consider the scenario faced here, in which the jury disagreement was neither express nor formally entered but instead implied through the structure of the jury instructions.

¶20 When Daniels's jury considered homicide by abuse and failed to return a verdict on that charge prior to its dismissal, jeopardy terminated. Although jeopardy may continue when the case meets limited and enumerated exceptions, including a mistrial for a hung jury, none of these applies here. Assuming arguendo we can infer the

jury was "unable to agree" as to the homicide by abuse charge, without the trial court's intervention, simple disagreement by the jury does not rise to the level of a mistrial. *Ervin*, 158 Wn.2d at 757 n.10 ("Therefore, an 'unable to agree' verdict (or nonverdict) is not the equivalent of a 'mistrial' on the charges upon which the jury was unable to agree."). No instruction, standing alone, can instruct a jury how to hang; judicial intervention is always required. *See Arizona*, 434 U.S. at 509. Since no exception to the general prohibition on retrial applies, jeopardy terminated on the homicide by abuse charge and retrial is barred.

*II.  The "unable to agree" instruction does not require departure from established precedent regarding a conviction for a lesser included offense*

¶21  The original majority opinion also failed to recognize the jury's failure to return a verdict for homicide by abuse amounts to an implied acquittal, at least without an affirmative indication from the jury that it is deadlocked. We must note that had the felony murder conviction (or acquittal) been affirmed on appeal, all concede any attempt to retry Daniels for homicide by abuse would be barred by double jeopardy. Therefore it seems inconsistent to opine reversal of conviction of the lesser offense reopens the greater offense for a new trial.[11]

¶22  Notwithstanding this contradiction, the original decision held an "unable to agree" jury instruction prevented a presumption of acquittal on the greater included offense. *Daniels*, 160 Wn.2d at 264. That decision claimed the "unable to agree" instruction implicitly operated as a statement of disagreement by the jury as to Daniels's guilt or innocence, prompting us to conclude an acquittal cannot be implied. *Id.*

---

[11] Moreover, the Supreme Court has indicated a greater offense is not reopened by a reversal of the lesser included offense, holding, "[c]onditioning an appeal of one offense on a coerced surrender of a valid plea of former jeopardy on another offense exacts a forfeiture in plain conflict with the constitutional bar against double jeopardy." *Green*, 355 U.S. at 193-94.

¶23 It distinguished the current case from previous cases on implied acquittal following a conviction for a lesser included offense based on the use of the "unable to agree" jury instruction. But the "unable to agree" instruction did not change the substance or the procedure used by a jury to determine guilt on multiple charges. The "unable to agree" instruction merely explains to the jury the procedure to use to render its verdict on a lesser included offense. *See State v. Watkins*, 99 Wn.2d 166, 178, 660 P.2d 1117 (1983). Since the "unable to agree" instruction does not reflect any change from the prior procedures, only a change in semantics, it does not warrant a variance from established Supreme Court precedent. Here, the jury failed to make an express statement of disagreement and therefore impliedly acquitted Ms. Daniels of the greater charge.

¶24 In contrast, courts have held an acquittal may not be implied where the jury used the "unable to agree" instruction *and* made an express affirmative statement of deadlock. The Eighth Circuit Court of Appeals found a new trial on the greater charge was warranted where the jury wrote on the verdict form, " '[a]fter all reasonable efforts, we, the jury, were unable to reach a verdict on the charge "Attempted Aggravated Sexual Abuse." ' " *United States v. Bordeaux*, 121 F.3d 1187, 1188 (8th Cir. 1997). The court found the "jury's express statement" of disagreement precluded the implication of acquittal. *Id.* at 1192; *see also State v. Linton*, 156 Wn.2d 777, 132 P.3d 127 (2006) (plurality opinion) (holding jeopardy terminated and defendant cannot be retried on greater offense, but justices split as to rationale). In the lead opinion in *Linton*, the plurality said, "Where an unable-to-agree instruction is used which allows the jury to move on to a lesser included offense when it acquits *or* is unable to agree on the greater charge, and the jury does move on without entering a verdict, the jury will necessarily remain 'silent' on the greater offense. [The jury] therefore implicitly acquit[s] the defendant of the greater offense." *Linton*, 156 Wn.2d at 788-89.

¶25 In *Ervin*, 158 Wn.2d 746, after five weeks of deliberations, the jury announced it was unable to reach a unan-

imous verdict, at which point the court asked the jury to continue deliberating, which it did for two more days, after which the jury again sent a message to the court, stating, " 'We believe that additional deliberation would not result in a unanimous verdict on any of the three counts.' " *Id.* at 750. We opined:

> Both the United States Supreme Court and this court have found that "where a jury ha[s] not been silent as to a particular count, but where, on the contrary, a disagreement is formally entered on the record," the implied acquittal doctrine does not apply. *Selvester*, 170 U.S. at 269; *see also* [*State v.*] *Davis*, 190 Wash. [164,] 166-67[, 67 P.2d 894 (1937)]. Therefore, regardless of any inquiry by the trial court, the blank verdict forms indicate on their face that the jury was unable to agree. Because the jurors were unable to agree, we cannot consider them to have acquitted Ervin of the greater charges. Thus, Ervin has no acquittal operating to terminate jeopardy.

*Id.* at 757 (first alteration in original) (footnote omitted).

¶26 Although this dicta can be read to mean a blank verdict form from the jury was a sufficiently formal entry of jury disagreement to continue jeopardy and allow retrial, such a reading would be contrary to *Green* and *Price*,[12] which require courts to infer an acquittal where a jury does not return a verdict. Since this reading is contrary to federal precedent, this cannot be what *Ervin* intended.

¶27 *Ervin* cited two cases to support its holding that juror disagreement is sufficient to nullify an implied acquittal, and in each of these cases the jury made its inability to agree express on the record. In the first "the jury rendered the following verdict: 'We, the jury, find James Selvester, the prisoner at the bar, guilty on the first, second and third counts of the indictment, and *disagree on the fourth count of the indictment.*' " *Selvester*, 170 U.S. at 262-63 (emphasis added). In the other, "the foreman of the jury 'informed the court that a verdict had been reached on count one, but that

---

[12] *Green*, 355 U.S. 184; *Price*, 398 U.S. 323.

*the jurors could not agree upon verdict on counts two and three.'" Davis,* 190 Wash. at 165 (emphasis added) (quoting transcript). Since *Ervin* based its holding on these examples of express (not implied) juror disagreement, it appears *Ervin* similarly requires a formal entry of disagreement by the jury and not simple jury silence in the face of a jury instruction. This reading is consistent with the facts in *Ervin,* which show the jury expressly stated it was deadlocked.

¶28 Read properly *Ervin,* like *Selvester, Davis, Bordeaux,* and *Linton,*[13] requires a formal express statement of disagreement by the jury on the record. Only when jurors make their inability to agree on a verdict express on the record can the court determine the jurors were *in fact* unable to agree, and is this juror disagreement tantamount to mistrial and sufficient to overcome the implication of acquittal. Unlike *Ervin, Selvester, Davis, Bordeaux,* and *Linton,*[14] Daniels's jury made no affirmative representation of deadlock to the court, nor is there any other evidence of jury deadlock such as protracted deliberations. The majority infers juror disagreement,[15] without evidence, based simply on the jury instructions. Such an inference is unsupported without some affirmative showing of jury deadlock.

¶29 Jeopardy on Daniels's homicide by abuse charge terminated when the jury was dismissed without returning a verdict on that charge. The trial court did not declare a mistrial here, and the "unable to agree" instruction is not

---

[13] *Ervin,* 158 Wn.2d 746; *Selvester,* 170 U.S. 262; *Davis,* 190 Wash. 164; *Bordeaux,* 121 F.3d 1187; *Linton,* 156 Wn.2d 777.

[14] *Ervin,* 158 Wn.2d 746; *Selvester,* 170 U.S. 262; *Davis,* 190 Wash. 164; *Bordeaux,* 121 F.3d 1187; *Linton,* 156 Wn.2d 777.

[15] The majority infers not only disagreement, but apparently disagreement sufficient to continue jeopardy, as a hung jury does. However, mere disagreement is not the equal of a hung jury; instead the jury must be "hopelessly deadlocked." *Arizona,* 434 U.S. at 509; *see also Ervin,* 158 Wn.2d at 757 n.10 ("Therefore, an 'unable to agree' verdict (or nonverdict) is not the equivalent of a 'mistrial' on the charges upon which the jury was unable to agree.").

its equivalent. Double jeopardy bars retrying Carissa Daniels for homicide by abuse.

¶30 I very respectfully dissent.

ALEXANDER, C.J., and STEPHENS, J., concur with SANDERS, J.

¶31 CHAMBERS, J. (dissenting) — Double jeopardy continues to vex this court. The principle of double jeopardy is simple: the government is not allowed to retry a person again and again until it gets a conviction. *See Green v. United States*, 355 U.S. 184, 187, 78 S. Ct. 221, 2 L. Ed. 2d 199 (1957) (quoting WILLIAM BLACKSTONE, 4 COMMENTARIES *335). While the principle is simple, its application in a world of many crimes with many degrees has become increasingly complicated. We are far from the only court to be vexed by double jeopardy. The Second Circuit Court of Appeals aptly described double jeopardy as a "jurisprudential greased pig—easy to see, but tough to grasp." *Boyd v. Meachum*, 77 F.3d 60, 64 (2d Cir. 1996). While I have come to agree largely with Justice Sanders, I write separately to express my own views.

¶32 Recently, this court has been tossed adrift in a sea of indecision over double jeopardy when faced with a jury's silence on a charge. Sometimes, silence is an implied acquittal, terminating jeopardy. Sometimes, silence signifies a hung jury, and jeopardy continues. We need a clear beacon to chart our course and light the way for the lower courts. Our case law is far from clear at the moment. The Ninth Circuit Court of Appeals politely recognized this recently. As the Ninth Circuit noted, our attempt in *State v. Linton*, 156 Wn.2d 777, 132 P.3d 127 (2006), "failed to garner a majority opinion." *Brazzel v. Washington*, 491 F.3d 976, 983 n.1 (9th Cir. 2007). We came briefly to unanimous accord a short time later in *State v. Ervin*, 158 Wn.2d 746, 147 P.3d 567 (2006), where, as the Ninth Circuit noted, we "changed course" and included a "puzzling footnote." *Brazzel*, 491 F.3d at 983 n.1 (citing *Ervin*, 158 Wn.2d at 757 n.10, where we noted that "an 'unable to agree' verdict (or

nonverdict) is not the equivalent of a 'mistrial' on the charges upon which the jury was unable to agree"). In *Ervin*, the jury had been instructed to leave the verdict form on the greater charge blank if it could not agree and go on to consider the lesser charges. We decided to treat that as a genuine deadlock, despite the fact that we had no way of knowing how genuine the deadlock was. *Ervin*, 158 Wn.2d at 757. Once again, I find I have signed an opinion I have come to lament. *Cf. Habitat Watch v. Skagit County*, 155 Wn.2d 397, 417, 120 P.3d 56 (2005) (Chambers, J., concurring).

¶33 We were driven to our present position by the currents of time and the increasing complexity of the criminal code. Explicit bars on double jeopardy have existed in English law at least since 1164 and the confrontation between King Henry II and Saint Thomas Becket. GEORGE C. THOMAS III, DOUBLE JEOPARDY: THE HISTORY, THE LAW 1 (1998). Double jeopardy's roots are far older. In 355 B.C., Demosthenes, a Greek orator and statesman, observed that the "'laws forbid the same man to be tried twice on the same issue.'" *Id.* at 73 (quoting DEMOSTHENES 20.147, *reprinted in* 1 DEMOSTHENES 589). Similar principles were present in the Babylonian Code of Hammurabi set down almost four thousand years ago. *Id.* (citing THE BABYLONIAN LAWS 13, 15 (Godfrey Rolls Driver & John C. Mills eds. & trans., Clarendon Press 1955)). Through most of the doctrine's history, it applied against a strikingly different system of criminal law. In the 13th century, English law recognized only seven felonies that rarely overlapped with one another. Note, *Statutory Implementation of Double Jeopardy Clauses: New Life for a Moribund Constitutional Guarantee*, 65 YALE L. J. 339, 342 n.14 (1956) (citing 2 FREDERICK POLLOCK & FREDERIC MAITLAND, HISTORY OF ENGLISH LAW 470 (2d ed. 1952)). The number of recognized offenses against the peace and dignity of the State has, of course, increased dramatically since then. *See generally* Title 9A RCW.

¶34 Our current constitutional prohibitions against double jeopardy, U.S. CONST. amend. V; WASH. CONST. art. I,

§ 9, were adopted when criminal law was not as simple as 13th century England but was much simpler than it is today. Over the years, more and more conduct has been criminalized; definitions of crimes often overlap and crimes can be committed by alternative means, in different degrees, and may be aggravated or enhanced. THOMAS, *supra*, at 7 (noting that "[t]he difficulties in discerning when two offenses are the 'same offense' are markedly reduced when one has a universe of six or seven offenses, rather than one of 7,000"). Under current Washington law, the same criminal course of conduct often can result in multiple counts of multiple charges, in multiple potential degrees. *See generally, e.g.*, ch. 9.41 RCW (regulating unlawful use of firearms); ch. 9A.28 RCW (conspiracy, attempt and solicitation); ch. 9A.32 RCW (different degrees and kinds of murder and manslaughter); ch. 9A.36 RCW (different degrees of assault); RCW 9A.08.020 (accomplice liability).[16] The jury is given the unenviable task of sorting through all the charges and picking those charges, if any, that the facts prove beyond a reasonable doubt. The jury must often decipher complex multiple choice instructions and verdict forms to render special verdicts. *See, e.g.*, 11 WASHINGTON PRACTICE: WASHINGTON PATTERN JURY INSTRUCTIONS: CRIMINAL 4.11, at 70 (2d ed. 1994) (WPIC) (lesser included crime or lesser included degree); WPIC 4.22, at 82 (elements of the crime in the alternative); WPIC 4.23, at 85 (elements of the crime, compounded means or method). Judges must sift through the verdict forms and determine which of the many findings amount to the same crime for double jeopardy and the same criminal conduct for sentencing. It is the multiplicity and overlapping of charges that makes application of the ancient doctrine of double jeopardy so complicated today. It

---

[16] This is hardly confined to Washington law. "Even a single criminal act may lead to multiple prosecutions if it is viewed from the perspectives of different statutes. Given the tendency of modern criminal legislation to divide the phases of a criminal transaction into numerous separate crimes, the opportunities for multiple prosecutions for an essentially unitary criminal episode are frightening." *Ashe v. Swenson*, 397 U.S. 436, 451-52, 90 S. Ct. 1189, 25 L. Ed. 2d 469 (1970) (Brennan, J., concurring) (citation omitted) (citing *State v. Elder*, 65 Ind. 282 (1879)).

becomes even more complicated when a subsequent opinion of this court renders some convictions void.

¶35 The case before us is not as complex as some. The defendant was charged with homicide in the first degree by abuse and felony murder in the second degree. The jury was instructed that if it either found Carissa Daniels not guilty of homicide by abuse or could not agree on that charge, it should consider the second degree felony murder charge, based on either assault or criminal mistreatment. It was also instructed to leave the first degree murder verdict form blank if it could not agree. The jury was silent on first degree murder, either deadlocking or impliedly acquitting, and found Daniels guilty of murder in the second degree. The jury was not asked to decide whether Daniels' second degree murder conviction was based on either assault or criminal mistreatment, and thus Daniels' conviction was reversed in the wake of our decision that felony murder two could not be predicated upon assault. *State v. Daniels*, 124 Wn. App. 830, 834, 103 P.3d 249 (2004) (citing *In re Pers. Restraint of Andress*, 147 Wn.2d 602, 56 P.3d 981 (2002)). Last year, I joined a unanimous decision that Daniels could be retried for first degree murder, concluding the jury's silence was not an implied acquittal. *State v. Daniels*, 160 Wn.2d 256, 267, 156 P.3d 905 (2007).

¶36 However, after the Ninth Circuit issued its opinion in *Brazzel*, 491 F.3d 976, we properly granted reconsideration and should meaningfully reconsider. In my view, the Ninth Circuit has seen that this court is adrift and has offered us a beacon upon which we can gain our bearings and chart a new course, a course our lower courts could more easily follow. The beacon will return us to the principle our founders sought to establish: the government should not be permitted to retry a person until it achieves a conviction. As early as 1898, the Supreme Court noted that a jury's silence could function as an acquittal. *Selvester v. United States*, 170 U.S. 262, 269, 18 S. Ct. 580, 42 L. Ed. 1029 (1898) (citing *Dealy v. United States*, 152 U.S. 539, 14 S. Ct. 680, 38 L. Ed. 545 (1894)). An implied acquittal occurs

when a jury returns a guilty verdict on a lesser included or lesser alternative charge but remains silent on the greater charges without announcing any sign of hopeless deadlock. *See, e.g., Green*, 355 U.S. at 190-91. However, where a mistrial is declared due to the "manifest necessity" presented by a hung jury, the accused may be retried without offending the prohibition on double jeopardy. *Id.* at 188. The jury deadlock must be "genuine." *Arizona v. Washington*, 434 U.S. 497, 509, 98 S. Ct. 824, 54 L. Ed. 2d 717 (1978). The issue then in the case before us is whether it can be said that the jury was genuinely deadlocked. Again, the Ninth circuit has provided the answer.

> When a judge does not find a mistrial to be of manifest necessity in his or her own judgment, "the prosecutor must shoulder the burden of justifying the mistrial if he is to avoid the double jeopardy bar. His burden is a heavy one. The prosecutor must demonstrate 'manifest necessity' for any mistrial declared over the objection of the defendant."

*Brazzel*, 491 F.3d at 982 (quoting *Arizona*, 434 U.S. at 505).

¶37 While I joined the court in *Ervin* and *Daniels*, 160 Wn.2d 256, I have come to believe we should stop trying to divine what a jury may have been thinking when it simply failed to answer a question. I simply no longer believe that we should draw such dramatic inferences from the jury's mere silence. *Contra Ervin*, 158 Wn.2d at 756-57. A more definitive showing of deadlock is required. We should adopt the straightforward and easy-to-apply rule that if the jury is given the full opportunity to reach a verdict on a charge but does not and is silent as to its reasons, the blank jury form functions as an implied acquittal. By contrast, where the record reflects questions or statements by the jury from which it can be inferred that the jury was hung, then the State may come forward to meet its burden to demonstrate that the jury was in fact hung, and jeopardy has not terminated. This test should be our beacon. I dissent.