[No. 76802-1.    En Banc.]
Argued February 13, 2007.    Decided May 3, 2007.

THE STATE OF WASHINGTON, *Petitioner*, v. CARISSA MARIE
DANIELS, *Respondent*.

258

*Gerald A. Horne, Prosecuting Attorney,* and *Kathleen Proctor, Deputy,* for petitioner.

*Clayton R. Dickinson,* for respondent.

¶1 SANDERS, J. — We are asked to decide whether the State may retry Carissa Daniels without violating double jeopardy. Daniels was charged with homicide by abuse and second degree felony murder, predicated on either assault or criminal mistreatment. The jury failed to agree on the homicide by abuse charge but found Daniels guilty of second degree murder. After the Court of Appeals reversed Daniels's murder conviction because it was predicated on assault, it held the State could recharge her on murder predicated on criminal mistreatment but could not retry her on the homicide by abuse charge because the jury's silence acted as an implied acquittal. The Court of Appeals also affirmed the trial court's suppression of statements Daniels made to police before they gave her any *Miranda*[1] warnings.

---

[1] *Miranda v. Arizona,* 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966) (holding the police must warn any suspect involved in a custodial interrogation of the right to remain silent, that statements may be used against him, and of the right to have an attorney present).

¶2 We hold the State may retry Daniels on both charges. Jeopardy has not terminated on the homicide by abuse charge because there was no implied acquittal, and jeopardy has not terminated on the second degree felony murder charge because the conviction was reversed for reasons other than insufficient evidence. We also affirm the Court of Appeals' exclusion of statements Daniels made before she was given her *Miranda* warnings.

## FACTS

¶3 In July 2000 17-year-old Carissa Daniels gave birth to her son Damon. Nine weeks later Damon was dead. Carissa was charged with homicide by abuse and felony murder in the second degree—domestic violence. The second degree felony murder charge was predicated either on second degree assault or first degree criminal mistreatment.

¶4 At trial the jury was given two verdict forms: verdict form A pertained to the homicide by abuse charge and verdict form B pertained to the second degree felony murder charge. The jury was instructed to fill in not guilty or guilty on form A if it unanimously agreed on a verdict as to the homicide by abuse charge, otherwise it should leave it blank. Clerk's Papers (CP) at 57 (Jury Instruction 23).[2] If the jury either found Daniels not guilty of homicide by abuse or could not agree as to that charge, the jury was then instructed to consider the second degree felony murder charge.

¶5 The jury left form A blank and found Daniels guilty of murder in the second degree. CP at 107-08. Daniels ap-

---

[2] Jury instruction 23 reads, in part:

When completing the verdict forms, you will first consider the crime of homicide by abuse as charged. If you unanimously agree on a verdict, you must fill in the blank provided in verdict form A the words "not guilty" or the word "guilty," according to the decision you reach. If you cannot agree on a verdict, do not fill in the blank provided in Verdict Form A.

If you find the defendant guilty on verdict form A, do not use verdict form B. If you find the defendant not guilty of the crime of homicide by abuse, or if after full and careful consideration of the evidence you cannot agree on that crime, you will consider the alternatively charged crime of murder in the second degree. . . .

pealed, arguing that after our decision in *In re Personal Restraint of Andress*, 147 Wn.2d 602, 56 P.3d 981 (2002), assault could not be a predicate offense for second degree murder. *State v. Daniels*, 124 Wn. App. 830, 844, 103 P.3d 249 (2004) (citing *Andress*, 147 Wn.2d 602). The Court of Appeals agreed, reversed the conviction, and remanded for a new trial. Furthermore, the Court of Appeals held the State could not retry her for homicide by abuse because the jury's silence on that charge acted as an implied acquittal. After the Court of Appeals filed its opinion, we decided *State v. Ervin*, 158 Wn.2d 746, 147 P.3d 567 (2006), further elaborating on this issue.

¶6 The State petitioned this court for review, seeking to retry Daniels on the homicide by abuse charge and to allow statements Daniels made before she was given *Miranda* warnings. Daniels cross-petitioned, arguing she cannot be retried for second degree felony murder predicated on criminal mistreatment. On October 6, 2006, we accepted review.

ANALYSIS

¶7 Double jeopardy and *Miranda* claims are issues of law requiring de novo review. *State v. Jackman*, 156 Wn.2d 736, 746, 132 P.3d 136 (2006). Unchallenged findings of fact, including those made during suppression hearings, are binding on appeal. *State v. Hill*, 123 Wn.2d 641, 647, 870 P.2d 313 (1994).

¶8 The United States Constitution guarantees "[n]o person shall be . . . subject for the same offense to be twice put in jeopardy of life or limb." U.S. CONST. amend. V. The Washington Constitution guarantees "[n]o person shall . . . be twice put in jeopardy for the same offense." WASH. CONST. art. I, § 9. We interpret both clauses identically. *State v. Gocken*, 127 Wn.2d 95, 107, 896 P.2d 1267 (1995); *State v. Schoel*, 54 Wn.2d 388, 391, 341 P.2d 481 (1959) (both clauses are "identical in thought, substance, and purpose").

¶9 Three elements must be met for a defendant's double jeopardy rights to be violated: (1) jeopardy must

have previously attached, (2) jeopardy must have previously terminated, and (3) the defendant is again being put in jeopardy for the same offense. *State v. Corrado*, 81 Wn. App. 640, 645, 915 P.2d 1121 (1996). Our concern here is whether jeopardy terminated for either charge.

## I. THERE WAS NO IMPLIED ACQUITTAL TERMINATING JEOPARDY ON DANIELS'S HOMICIDE BY ABUSE CHARGE

¶10 "[T]he protection of the Double Jeopardy Clause by its terms applies only if there has been some event, such as an acquittal, which terminates the original jeopardy." *Richardson v. United States*, 468 U.S. 317, 325, 104 S. Ct. 3081, 82 L. Ed. 2d 242 (1984). Jury silence can be construed as an acquittal and can therefore act to terminate jeopardy. *Green v. United States*, 355 U.S. 184, 188, 78 S. Ct. 221, 2 L. Ed. 2d 199 (1957) (stating jury's silence acted as implied acquittal). But such is not the case when a jury fails to agree, and such disagreement is evident from the record. *Ervin*, 158 Wn.2d at 753-54.

¶11 Daniels argues her conviction for second degree felony murder terminates jeopardy for all charges because the State already had an opportunity to convict her for homicide by abuse and was unsuccessful. Therefore, she claims it is unfair to allow the State to raise the specter of a retrial on this charge if a defendant is successful in reversing the conviction on other included charges.[3] This argument has appeal on purely fairness grounds, and if we were deciding this as a matter of first impression, perhaps we would

---

[3] If Daniels's conviction for second degree felony murder had not been overturned on appeal, then the State would not have been able to retry her for homicide by abuse:

> [W]here the jury is hung on the greater charge but convicts of the lesser included charge, and the conviction of the lesser included charge is not overturned on appeal, the conviction, once final, terminates jeopardy, and the defendant cannot be retried for the greater charge if it constitutes the same offense for double jeopardy purposes.

*State v. Linton*, 156 Wn.2d 777, 792, 132 P.3d 127 (2006) (Sanders, J., concurring). In *Ervin*, we accepted the concurrence's reasoning. *Ervin*, 158 Wn.2d at 758-59.

agree. But for over a century the United States Supreme Court has held that when a jury is unable to agree, jeopardy has not terminated. *Selvester v. United States*, 170 U.S. 262, 269, 18 S. Ct. 580, 42 L. Ed. 1029 (1898).

> Doubtless, where a jury, although convicting as to some, are *silent* as to other counts in an indictment, and are discharged without the consent of the accused, . . . the effect of such discharge is "equivalent to acquittal," because, as the record affords no adequate legal cause for the discharge of the jury, any further attempt to prosecute would amount to a second jeopardy, as to the charge with reference to which the jury has been silent. But such obviously is not the case, where a jury have not been silent as to a particular count, *but where, on the contrary, a disagreement is formally entered on the record.* The effect of such entry justifies the discharge of the jury, and therefore a subsequent prosecution for the offence as to which the jury has disagreed and on account of which it has been regularly discharged, would not constitute second jeopardy.

*Id.* (emphasis added); *see also State v. Davis*, 190 Wash. 164, 67 P.2d 894 (1937) (quoting same). In *Richardson* the United States Supreme Court specifically found the failure of a jury to reach a verdict does not terminate the original jeopardy. *Richardson*, 468 U.S. at 325-26 ("[W]e hold . . . the failure of the jury to reach a verdict is not an event which terminates jeopardy. . . . The Government, like the defendant, is entitled to resolution of the case by verdict from the jury, and jeopardy does not terminate when the jury is discharged because it is unable to agree.").

¶12 During oral arguments, defense counsel pointed to language in *Corrado*, where the court held:

> The termination element arises from the idea that the State should have one complete opportunity to convict; in other words, jeopardy should "terminate" when the State has had— but not before the State has had—one full and fair opportunity to prosecute.

81 Wn. App. at 645-46. This is certainly true. And while the State is allowed only one bite at the apple, its one bite is a full one. The Supreme Court has "effectively formulated a

concept of continuing jeopardy that has application where criminal proceedings against an accused have not run their full course." *Price v. Georgia*, 398 U.S. 323, 326, 90 S. Ct. 1757, 26 L. Ed. 2d 300 (1970). When the jury cannot decide on a verdict, and disagreement is formally entered onto the record, then the State's one bite continues and the defendant can be retried.

¶13 The issue before us today is nearly identical to what we considered in *Ervin*, 158 Wn.2d 746.[4] Ervin was charged with aggravated first degree murder, attempted first degree murder, and second degree felony murder. The jury was unable to agree on the first two charges but found Ervin guilty of second degree felony murder. Following *Andress*, the Court of Appeals vacated Ervin's felony murder conviction as it was impermissibly predicated on assault. But nevertheless we unanimously found the jury was unable to agree on the first two charges and therefore jeopardy had not terminated on these offenses. *Id.* at 756.

¶14 A jury is presumed to follow the instructions given. *Id.* (citing *State v. Stein*, 144 Wn.2d 236, 247, 27 P.3d 184 (2001)). And both Ervin's and Daniels's juries were similarly instructed to leave form A blank only if they could not agree, otherwise they were to write guilty or not guilty. *Id.* at 750; CP at 57. And in *Ervin* because the jury left the verdict form blank and unsigned, we reasoned:

> the blank verdict forms indicate on their face that the jury was unable to agree. Because the jurors were unable to agree, we cannot consider them to have acquitted Ervin of the greater charges. Thus, Ervin has no acquittal operating to terminate jeopardy.

*Ervin*, 158 Wn.2d at 757 (footnotes omitted).

¶15 The Court of Appeals below found Daniels's jury had been silent and applied the rule of lenity to hold that between assuming acquittal or a divided jury, it must presume acquittal. *State v. Daniels*, 124 Wn. App. 830, 844,

---

[4] During oral arguments, Daniels's counsel admitted we could find for Daniels on this argument only if we reversed our unanimous decision in *Ervin*.

103 P.3d 249 (2004). But we had not yet decided *Ervin*, and considering our reasoning there regarding the identical jury instruction, as well as clear precedent from the United States Supreme Court, we hold jeopardy did not terminate on Daniels's homicide by abuse charge and she may be retried.

## II. THERE WAS NO FINAL CONVICTION TERMINATING JEOPARDY ON DANIELS'S SECOND DEGREE FELONY MURDER CHARGE

¶16 At trial the State charged Daniels with second degree felony murder, predicated on either assault or criminal mistreatment. The Court of Appeals correctly reversed the conviction because felony murder cannot be predicated on assault. Daniels argues this reversal terminates jeopardy. "As a general rule, jeopardy terminates with a conviction that becomes unconditionally final, but not with a conviction that the defendant successfully appeals." *Corrado*, 81 Wn. App. at 647 (footnote omitted). Daniels's second degree felony murder conviction, however, is not final because it can also be predicated on criminal mistreatment.

¶17 Daniels argues the jury did not indicate whether it found her guilty under the predicate offense of criminal mistreatment, assault, or both, and we should infer the jury acquitted her of second degree felony murder predicated on criminal mistreatment. But the State may retry Daniels for the same charge when a conviction is reversed for any reason other than insufficient evidence. *See Burks v. United States*, 437 U.S. 1, 18, 98 S. Ct. 2141, 57 L. Ed. 2d 1 (1978) (holding that the double jeopardy clause bars retrial where a court has vacated a conviction due to insufficient evidence); *North Carolina v. Pearce*, 395 U.S. 711, 720, 89 S. Ct. 2072, 23 L. Ed. 2d 656 (1969) (double jeopardy clause "imposes no limitations whatever upon the power to retry a defendant who has succeeded in getting his first conviction set aside" (emphasis omitted)). Sufficient evidence exists to support the predicate crime of criminal mistreatment, *see Daniels*,

124 Wn. App. at 840-41; therefore Daniels's conviction is not final, and jeopardy has not terminated.

### III. DANIELS WAS IN CUSTODY WHEN SHE WAS QUESTIONED AND THEREFORE REQUIRED *MIRANDA* WARNINGS

¶18 The Court of Appeals held Daniels's statements about her son's death prior to receiving *Miranda* warnings must be suppressed. We affirm.

¶19 The State argues Daniels was not in custody and *Miranda* warnings were not required based on the United States Supreme Court's decision in *Berkemer v. McCarty*, 468 U.S. 420, 104 S. Ct. 3138, 82 L. Ed. 2d 317 (1984). There the Court reiterated the familiar rule that the police must give *Miranda* warnings when a suspect is taken into custody and interrogated:

> "By custodial interrogation, we mean questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way."

*Id.* at 428 (quoting *Miranda*, 384 U.S. at 444). The Court continued: "It is settled that the safeguards prescribed by *Miranda* become applicable as soon as a suspect's freedom of action is curtailed to a 'degree associated with formal arrest.'" *Id.* at 440 (quoting *California v. Beheler*, 463 U.S. 1121, 1125, 103 S. Ct. 3517, 77 L. Ed. 2d 1275 (1983) (per curiam)). The State reads this language to almost suggest a suspect is entitled to *Miranda* warnings only when she is indeed formally arrested. Rather we must determine whether, given this factual setting, a "reasonable person [would] have felt he or she was not at liberty to terminate the interrogation and leave." *Thompson v. Keohane*, 516 U.S. 99, 112, 116 S. Ct. 457, 133 L. Ed. 2d 383 (1995). If not, she must be given *Miranda* warnings before the police ask any question likely to provoke an incriminating response.

¶20 Seventeen-year-old Carissa Daniels was questioned for over 90 minutes by two police detectives at

the precinct in an 8 foot by 10 foot room. She was not given any *Miranda* warnings until near the end of the interrogation. This questioning took place the day after her son's funeral while she was under stress. The detectives refused to allow her father to accompany her. Shortly after the detectives belatedly gave her *Miranda* warnings, Daniels refused to answer any more questions, and she was placed in a holding cell. These facts are not in dispute.

¶21 The Court of Appeals, citing *Berkemer* and *Thompson*, correctly found Daniels was subjected to a custodial interrogation because a reasonable person in Daniels's position would not feel free to terminate the interrogation and voluntarily leave. Therefore, any statements Daniels made prior to being given *Miranda* warnings were properly excluded.

## CONCLUSION

¶22 We hold the State may retry Daniels on both the homicide by abuse charge and second degree felony murder charge, predicated on criminal mistreatment. Also, statements Daniels made to the police before being given *Miranda* warnings must be excluded because she was subjected to a custodial interrogation.

¶23 Therefore we reverse the Court of Appeals in part and affirm in part and remand to the superior court for proceedings consistent with this opinion.

ALEXANDER, C.J., and C. JOHNSON, MADSEN, BRIDGE, CHAMBERS, OWENS, FAIRHURST, and J.M. JOHNSON, JJ., concur.

Reconsideration granted January 9, 2008. Case to be set for rehearing.