

**FILE**
IN CLERKS OFFICE
SUPREME COURT, STATE OF WASHINGTON
DATE MAY 07 2015

CHIEF JUSTICE

This opinion was filed for record
at 8:00 am on May 7, 2015

for Ronald R. Carpenter
Supreme Court Clerk

# IN THE SUPREME COURT OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | No. 88913-9 |
| Respondent, | ) | |
| v. | ) | En Banc |
| EDWARD MICHAEL GLASMANN, | ) | |
| Petitioner. | ) | Filed MAY 07 2015 |

OWENS, J. — The Washington and United States Constitutions prohibit the government from placing persons in double jeopardy, meaning that the government cannot prosecute a person twice for the same offense. U.S. CONST. amend. V; WASH. CONST. art. I, § 9. Our case law firmly establishes that if (1) the State charges a person with greater and lesser offenses and the jury is unable to agree regarding the greater offense but finds the defendant guilty of the lesser offense and (2) the defendant's conviction for the lesser offense is reversed on appeal, then the State may retry the defendant for the greater offense without violating double jeopardy. *State v. Daniels*, 160 Wn.2d 256, 265, 156 P.3d 905 (2007) (*Daniels* I), *adhered to on recons.*, 165 Wn.2d 627, 628, 200 P.3d 711 (2009) (*Daniels* II). In this case, Edward Michael

Glasmann asks us to reconsider the *Daniels* decisions because our approach now differs from the Ninth Circuit Court of Appeals' approach. We will overturn our precedent only when someone shows that it is incorrect and harmful. Since Glasmann has not made that showing regarding the *Daniels* decisions, we see no reason to overturn them.

FACTS

The State charged Glasmann with first degree assault, first degree attempted robbery, first degree kidnapping, and obstruction of a law enforcement officer. At trial, the trial court instructed the jury on lesser offenses for each of the charges except obstruction of a law enforcement officer. For each potential offense, the trial court provided the jury with a different verdict form, and it instructed the jury that for the verdict forms containing the greater charges, "[i]f you unanimously agree on a verdict, you must fill in the blank provided [on the verdict form] the words 'not guilty' or the word 'guilty,' according to the decision you reach. If you cannot agree on a verdict, do not fill in the blank provided [on the verdict form]." Clerk's Papers at 52. The instruction went on to state, "If you find the defendant not guilty of the [higher crime], or if after full and careful consideration of the evidence you cannot agree on that crime, you will consider the [relevant lesser crime]." *Id.* at 52-53.

The jury left the verdict forms blank for first degree assault and first degree attempted robbery and instead convicted Glasmann of second degree assault and

second degree attempted robbery. The jury also convicted Glasmann of first degree kidnapping and obstructing a law enforcement officer.

Subsequently, Glasmann filed a personal restraint petition alleging prosecutorial misconduct. We held that the prosecutor committed misconduct by using an inflammatory slideshow during closing argument, reversed Glasmann's convictions, and remanded for a new trial. *In re Pers. Restraint of Glasmann*, 175 Wn.2d 696, 714, 286 P.3d 673 (2012). The State refiled all of the original charges. Glasmann objected to being retried for first degree assault and first degree attempted robbery on double jeopardy grounds. The trial court denied his objection based on *Daniels* I. We granted direct discretionary review.

## ISSUE

Should we overturn our established rule that allows the State to retry a defendant on a charge on which the jury was previously unable to agree?

## ANALYSIS

*1. Double Jeopardy and Our Jurisprudence Regarding Implied Acquittals*

The United States Constitution provides that no person shall "be subject for the same offense to be twice put in jeopardy of life or limb." U.S. CONST. amend. V. Our state constitution prohibits persons from being "twice put in jeopardy for the same offense." WASH. CONST. art. I, § 9. We interpret our state's double jeopardy

provision identically to the federal provision. *State v. Schoel*, 54 Wn.2d 388, 391, 341 P.2d 481 (1959).

In general, we find a double jeopardy violation "where (1) jeopardy has previously attached, (2) that jeopardy has terminated, and (3) the defendant is in jeopardy a second time for the same offense in fact and law." *State v. Ervin*, 158 Wn.2d 746, 752, 147 P.3d 567 (2006). Here, only whether jeopardy has terminated is at issue.

"[I]t has long been settled under the Fifth Amendment that a verdict of acquittal is final, ending a defendant's jeopardy." *Green v. United States*, 355 U.S. 184, 188, 78 S. Ct. 221, 2 L. Ed. 2d 199 (1957). The United States Supreme Court has said that a jury's silence can also act as an implied acquittal terminating jeopardy in two circumstances. *Id.* at 190-91. First, jeopardy terminates as to a greater offense when a jury convicts a defendant of a lesser included offense but is silent regarding the greater offense. *Id.* Second, a defendant's jeopardy on a greater charge ends "when the first jury '[is] given a full opportunity to return a verdict' on that charge and instead reache[s] a verdict on the lesser charge." *Price v. Georgia*, 398 U.S. 323, 329, 90 S. Ct. 1757, 26 L. Ed. 2d 300 (1970) (quoting *Green*, 355 U.S. at 191).

However, silence does not terminate jeopardy when the record indicates that the jury failed to agree on a verdict. *Ervin*, 158 Wn.2d at 757. In *Ervin*, the trial court instructed the jury regarding aggravated first degree murder and lesser included

4

offenses (including attempted first degree murder), and used multiple verdict forms and the same "unable to agree" jury instructions used in this case. *Id.* at 749-50. The trial court instructed the jury that if it unanimously agreed on a verdict for first degree murder, it should fill in the verdict form. *Id.* The trial court went on to instruct the jury that only if it could not agree on a verdict for first degree murder should it leave the verdict form blank and instead consider the lesser offenses. *Id.* The jury left the verdict form blank for first degree murder and attempted first degree murder, and instead convicted Ervin of second degree murder. *Id.* at 750-51. On appeal, the Court of Appeals vacated Ervin's conviction because of new case law that affected the conviction, and the State subsequently refiled the aggravated first degree murder and attempted first degree murder charges. *Id.* at 751. We held that double jeopardy did not bar retrial on those charges because the record indicated that the jury failed to agree on a verdict for them and thus the jury could not have silently acquitted Ervin of them. *Id.* at 756-57. We reasoned that "the blank verdict forms indicate[d] on their face that the jury was unable to agree" because (1) the trial court gave the jury the "unable to agree" instructions, (2) "juries are presumed to follow the instructions provided," and (3) the jury did not write in "not guilty" on the verdict forms for the greater charges—instead, it left the forms blank. *Id.*

We reaffirmed *Ervin* in *Daniels* I. In *Daniels* I, the State charged Daniels with homicide by abuse and second degree murder. 160 Wn.2d at 260. As in *Ervin*, the

5

trial court gave the jury the "unable to agree" instruction, telling the jury that if it could not agree on a verdict for homicide by abuse, it should leave that verdict form blank and instead consider second degree murder. *Id.* The jury left the homicide by abuse verdict form blank and instead convicted Daniels of second degree murder. *Id.* The Court of Appeals reversed Daniels's conviction because of new case law that affected her conviction. *Id.* at 261. We allowed the prosecutor to reinstate the homicide by abuse charge on retrial and reaffirmed *Ervin*, finding that because the blank verdict form indicated on its face that the jury was unable to agree regarding homicide by abuse, double jeopardy did not bar the State from retrying Daniels on that charge. *Id.* at 264-65.

Around the time we decided *Daniels* I, the Ninth Circuit came to the opposite conclusion about the conclusions that can be drawn from a blank verdict form when a jury is given an "unable to agree" instruction in *Brazzel v. Washington*, 491 F.3d 976 (9th Cir. 2007). In that case, the State charged Brazzel with, among other charges, attempted first degree murder and the lesser alternative charge of first degree assault. *Id.* at 979. The trial court gave the jury the "unable to agree" instruction discussed above, instructing the jury that if it unanimously agreed on a verdict for attempted first degree murder, it must fill in the verdict form. *Id.* at 979-80. The jury was further instructed that only if it could not agree on a verdict for attempted first degree murder should it leave the form blank. *Id.* The jury left the verdict form blank for

6

attempted first degree murder and instead convicted Brazzel of first degree assault. *Id.* at 979.

After Brazzel's case was remanded for a new trial and the prosecutor reinstated the attempted first degree murder charge, the Ninth Circuit found that double jeopardy barred the State from retrying Brazzel on that charge. *Id.* at 979, 984-85. The Ninth Circuit found that the jury's inability to reach a verdict "'after full and careful deliberation on the charge of attempted murder in the first degree' . . . was an implied acquittal." *Id.* at 984 (quoting the trial court's instructions). The Ninth Circuit reasoned that the jury must be "'genuinely deadlocked'" about the verdict in order for the State to avoid the double jeopardy bar on retrial, and "[g]enuine deadlock is fundamentally different from a situation in which jurors are instructed that if they 'cannot agree,' they may compromise by convicting of a lesser alternative crime, and they then elect to do so without reporting any splits or divisions when asked about their unanimity." *Id.* (quoting *Arizona v. Washington*, 434 U.S. 497, 509, 98 S. Ct. 824, 54 L. Ed. 2d 717 (1978)).

Although the Ninth Circuit's decisions are not binding on this court, we reconsidered *Daniels* I in light of *Brazzel*. *Daniels* II, 165 Wn.2d at 628 (Madsen, J., concurring). We chose to "adhere to our prior published opinion." *Id.* Glasmann

7

asks us to again reconsider *Daniels* I.[1] As explained below, we again adhere to *Daniels* I.

### 2. *Glasmann Does Not Demonstrate that* Daniels *I Is Incorrect and Harmful*

We will abandon precedent only if it is clearly shown to be incorrect and harmful. *In re Rights to Waters of Stranger Creek*, 77 Wn.2d 649, 653, 466 P.2d 508 (1970). Glasmann argues that *Daniels* I is both. First, he claims that it is incorrect because it is inconsistent with the holding of the United States Supreme Court that "[j]eopardy terminates when the jury is dismissed without returning a verdict despite having a full opportunity to do so." Pet'r's Br. at 14 (citing *Green*, 355 U.S. at 191). Second, he argues *Daniels* I is harmful because it "interposes an unnecessary and burdensome step on defendants" to seek federal review in order to avoid being retried on the same charges. *Id.* at 18. Neither of Glasmann's arguments are persuasive. First, the Supreme Court precedent that Glasmann cites does not involve an analogous "unable to agree" jury instruction and thus the core reasoning from those cases is inapplicable here. Second, the fact that defendants can obtain relief in federal court

---

[1] The dissent argues that *Daniels* I does not control this case, but *Daniels* I clearly held that if the State charges a person with greater and lesser offenses and the jury is unable to agree regarding the greater offense, the State may retry the defendant for the greater offense without violating double jeopardy. 160 Wn.2d at 264-65. Even Glasmann agrees that our *Daniels* decisions control—he argues that we "[s]hould [r]econsider . . . State v. Daniels." Pet'r's Br. at 5 (underline omitted). To the extent the dissent disagrees with the *Daniels* decisions and *Ervin*, it should engage in an incorrect and harmful analysis, as discussed below. *In re Rights to Waters of Stranger Creek*, 77 Wn.2d 649, 653, 466 P.2d 508 (1970).

only underscores how *Daniels* I is not harmful. We will address each argument further in turn.

First, *Daniels* I is not inconsistent with *Green* and *Price*, the United States Supreme Court precedent about implied acquittals on which Glasmann relies. The core reasoning from *Green* and *Price* does not apply here because those cases did not involve "unable to agree" instructions. *See Green*, 355 U.S. at 185; *Price*, 398 U.S. at 324. Rather, in *Green*, the trial court merely "instructed the jury that it could find Green guilty of arson under the first count and of either (1) first degree murder or (2) second degree murder under the second count." 355 U.S. at 185. The jury convicted Green of arson and second degree murder, but the "verdict was silent on [first degree murder]." *Id.* at 186. After the prosecutor reinstated the first degree murder charge on retrial, the Court reasoned that it was a double jeopardy violation because the jury impliedly acquitted Green of first degree murder by staying silent on that charge in its verdict. *Id.* at 190. The Court bolstered its assumption of the jury's intent by stating that the jury "was given a full opportunity to return a verdict and no extraordinary circumstances appeared which prevented it from doing so. Therefore[,] . . . Green's jeopardy for first degree murder came to an end when the jury was discharged." *Id.* at 191. The Court summed up its reasoning by saying, "In brief, we believe this case can be treated no differently, for purposes of former jeopardy, than if the jury had

9

returned a verdict which expressly read: 'We find the defendant not guilty of murder in the first degree but guilty of murder in the second degree.'" *Id.*

Here, because of the specific jury instructions about how the jury was to indicate a conviction or acquittal and how it was to indicate a failure to agree, we cannot reasonably conclude that the jury acquitted Glasmann. The jury was specifically instructed that if it unanimously agreed on a verdict, it was required to fill in the blank on the verdict form. However, if it could not agree on a verdict, it was instructed to leave the form blank. Given those instructions, the jurors leaving the verdict form blank necessarily meant that they were genuinely deadlocked on the charge. Unlike *Green*, here the jury's verdict form can be treated no differently than if the jury had returned a verdict that expressly read, "We were unable to agree on a verdict for first degree assault and first degree attempted robbery, but we find Glasmann guilty of second degree assault, second degree attempted degree robbery, first degree kidnapping, and obstructing a law enforcement officer."[2]

Thus, Glasmann fails to show how *Daniels* I is incorrect—the United States Supreme Court precedent on which he relies is consistent with our case law.

---

[2] The dissent argues that our holding takes away from the trial judge's role in declaring mistrials, but the dissent's argument ignores the practical reality facing trial court judges in these kinds of situations. In these situations (where a jury convicts on a lesser charge while leaving the verdict form blank for the greater charge after receiving the "unable to agree" instructions), a trial judge could do nothing other than find that the jury agrees as to the lesser charge but is unable to agree as to the greater charge. Thus, the dissent's concern is unwarranted.

Additionally, we are unpersuaded by the Ninth Circuit's decision in *Brazzel* that a jury leaving a verdict form blank in this scenario amounts to an implied acquittal because being "unable to agree" is different from the genuine deadlock necessary for a mistrial. The Supreme Court decision on which the Ninth Circuit relies, *Washington*, uses the phrase "unable to reach a verdict" interchangeably with a jury being "genuinely deadlocked." 434 U.S. at 509. No United States Supreme Court opinion addresses a scenario in which the jury is specifically instructed to indicate that it is unable to agree by leaving the verdict form blank. We find that permitting the State to retry Glasmann in this scenario is consistent with the long-standing rule that "the jury [being] unable to reach a verdict [is] . . . the classic basis for a proper mistrial."[3] *Id.*

Second, Glasmann fails to show that *Daniels* I is harmful. The only harm Glasmann identifies is that because our precedent conflicts with Ninth Circuit precedent, he must file in federal court to obtain relief. Although we recognize that a defendant who wishes to obtain relief will face the burden of filing in federal court, we find that degree of harm insufficient to overturn our precedent. It would

---

[3] The dissent also argues that our holding defies the public policy goal of reducing mistrials, as discussed in *State v. Labanowski*, 117 Wn.2d 405, 816 P.2d 26 (1991), but the dissent fails to recognize the unique procedural postures in which these kinds of cases arise. In these cases, procedurally, the jury has already agreed to convict the defendant of a lesser charge at the trial level (thus avoiding a mistrial). Our holding applies only if an appellate court reverses the conviction for the lesser charge and remands for retrial. Thus, our holding in no way conflicts with the *Labanowski* efficiency concerns. *Id.* at 420.

11

undermine our role as an independent state court in our system of federalism if we overturned our precedent simply because it conflicted with a Ninth Circuit decision. Accordingly, Glasmann does not demonstrate that *Daniels* I is harmful.

## CONCLUSION

In *Daniels* I, we reiterated that if the State charges a person with greater and lesser offenses and the jury is unable to agree regarding the greater offense, the State may retry the defendant for the greater offense without violating double jeopardy. *Daniels* I, 160 Wn.2d at 264-65. Glasmann fails to demonstrate that the *Daniels* decisions are incorrect and harmful. Accordingly, we adhere to our precedent and affirm the trial court.

WE CONCUR:

*Result only*

Madsen, C.J.

Wiggins, J.

Gonzalez, J.

*State v. Glasmann (Edward Michael)*

No. 88913-9

STEPHENS, J. (dissenting)—The majority frames the issue here as whether we should overrule our prior case, *State v. Daniels*, 160 Wn.2d 256, 156 P.3d 905 (2007) (*Daniels* I), *superseded by* 165 Wn.2d 627, 200 P.3d 711 (2009) (*Daniels* II). I disagree. This case turns on an issue the *Daniels* decisions did not consider, much less decide. We need not overrule any precedent.

The majority misreads the *Daniels* decisions to hold that when a jury that is given an "unable to agree" instruction convicts the defendant on a lesser charge, the jury is deemed to be genuinely deadlocked on the greater charge, amounting to a mistrial. Majority at 6-7, 10. We did not hold this in the *Daniels* decisions. Indeed, we said the exact opposite in *State v. Ervin*—the key case on which the *Daniels* decisions relied. *See State v. Ervin*, 158 Wn.2d 746, 757 n.10, 147 P.3d 567 (2006). Our holding in the *Daniels* decisions, as in *Ervin*, was limited to recognizing that a jury's silence on a higher charge while using the unable to agree instruction confirms the jury did not *impliedly acquit* the defendant of that charge. The question in this

case is different, namely, whether the jury's actions are equivalent to an automatic mistrial.

The majority breaks new ground today when it equates "unable to agree" with an automatic mistrial. It creates the untenable situation where the jury instruction we adopted for the very purpose of avoiding mistrials caused by hung juries, *see State v. Labanowski*, 117 Wn.2d 405, 420, 816 P.2d 26 (1991), actually requires a mistrial whenever the jury relies on it. Further, the majority's holding fails to follow the commands of the United States Supreme Court's jurisprudence in *Green v. United States*, 355 U.S. 184, 78 S. Ct. 221, 2 L. Ed. 2d 199 (1957) and *Arizona v. Washington*, 434 U.S. 497, 98 S. Ct. 824, 54 L. Ed. 2d 717 (1978). I would follow *Washington*'s long-standing rule that it is the trial judge who must determine if a manifest necessity for a new trial exists because the jury is genuinely deadlocked. 434 U.S. at 503-17; *see also State v. Jones*, 97 Wn.2d 159, 162-64, 641 P.2d 708 (1982) (relying on *Washington* and announcing the same rule). Contrary to the majority's view, the jury cannot hang itself. Without a judicial finding of a manifest necessity for retrial, jeopardy terminates upon entry of the jury's verdict on the lower charge. Because no such judicial determination was made below, I would reverse the Court of Appeals and hold the State may not retry Glasmann on the first degree charges. Accordingly, I respectfully dissent.

I

There is no debate about the basic structure of the double jeopardy clause analysis. I agree with the majority that "[w]e interpret our state's double jeopardy

provision identically to the federal provision." Majority at 4 (citing *State v. Schoel*, 54 Wn.2d 388, 391, 341 P.2d 481 (1959)). The clause prohibits retrial "'where (1) jeopardy has previously attached, (2) that jeopardy has terminated, and (3) the defendant is in jeopardy a second time for the same offense in fact and law.'" *Id.* (quoting *Ervin*, 158 Wn.2d at 752). I also agree that the only question before us is whether jeopardy has terminated in this case. *Id.* And I agree that a defendant's acquittal terminates jeopardy. *Id.*

But I disagree with the majority when it describes how acquittal terminates jeopardy. In particular, the majority says the United States Supreme Court in *Green* held that a jury's "silence can also act as an implied acquittal terminating jeopardy in two circumstances." Majority at 4 (citing *Green*, 355 U.S. at 190-91). That is not so. While *Green* did explain two circumstances that terminate jeopardy, only the first circumstance is an "implied acquittal." *Green*'s first rationale was that a jury "implicit[ly] acquit[s]" on a higher charge when it convicts on a lower charge while leaving the verdict on the higher charge blank. *Green*, 355 U.S. at 190-91. The basic idea of this theory is that the jury *did reach a verdict*, despite the jury's silence, and the court may in appropriate circumstances infer what the verdict was.

*Green*'s second rationale is quite different. It applies when a jury *fails to reach a verdict*, either expressly or impliedly. *Green* holds that when the jury fails to return a verdict and the jury is dismissed without the defendant's consent after the jury has had "a full opportunity to return a verdict and no extraordinary circumstances appeared which prevented it from doing so," jeopardy for the higher

charge terminates "so that he could not be retried for that offense." *Id.* at 191 (citing *Wade v. Hunter*, 336 U.S. 684, 69 S. Ct. 834, 93 L. Ed. 974 (1949) (holding retrial is permissible only where a manifest necessity exists)).

In this case, we must apply this framework to a jury's blank verdict arrived at while using the unable to agree jury instructions we previously approved. In 1991, this court endorsed unable to agree jury instructions as the correct statement of Washington law on how a jury must transition between different degrees of crimes. *See Labanowski*, 117 Wn.2d at 414-15. In doing so, we joined a minority of jurisdictions. *See State v. Davis*, 266 S.W.3d 896, 906 (Tenn. 2008) (collecting cases from 13 other jurisdictions to adopt this instruction). Under such instructions, the jury is told that if, after full and careful consideration of the evidence, the jurors cannot agree on the highest charge, the jury must consider the next lower charge. Unable to agree instructions are a departure from traditional "acquittal first" instructions, which tell the jury that it can reach a lesser-included crime only after it unanimously acquits on the higher charge. *See Labanowski*, 117 Wn.2d at 418 & n.7. This court explained two benefits of unable to agree instructions. First, unable to agree instructions "allow[] the jury to correlate more closely the criminal acts with the particular criminal conviction." *Id.* at 420. Second, unable to agree instructions avoid costly retrials that are caused by hung juries, which are more likely in an acquittal first regime. *Id.*

II

As noted, this court has never decided the issue this case presents. The unfortunate framing of the issue as whether to overrule the *Daniels* decisions misunderstands the scope of our prior holdings.[1] The majority blends two concepts—an implied acquittal (*Green*'s first rationale) and the discharge of the jury without a finding of manifest necessity for retrial (*Green*'s second rationale)—under the single heading of an "implied acquittal." But the two concepts are distinct: one applies when a verdict *has been* implicitly reached, and the other applies when a verdict has *not* been reached. *See Price v. Georgia*, 398 U.S. 323, 328-29, 90 S. Ct. 1757, 26 L. Ed. 2d 300 (1970) (describing *Green*'s two rationales as discrete). We recognized this much in our unanimous *Ervin* opinion:

> Jeopardy may be terminated in one of *three ways*: (1) when the defendant is acquitted; (2) when the defendant is convicted and that conviction is final; and (3) when the court dismisses the jury without the defendant's consent and the dismissal is not in the interest of justice, *see Green v. United States*, 355 U.S. 184, 188, 78 S. Ct. 221, 2 L. Ed. 2d 199 (1957) ("[A] defendant is placed in jeopardy once he is put to trial before a jury so that if the jury is discharged without his consent he cannot be tried again."). A hung jury is an unforeseeable circumstance requiring dismissal of the jury in the interest of justice. *See Green*, 355 U.S. at 188; *State v. Jones*, 97 Wn.2d 159, 162, 641 P.2d 708 (1982) (finding that discharge has the same effect as acquittal "'unless such discharge was necessary in the interest of the proper administration of public justice'" (emphasis omitted) (quoting *State v. Connors*, 59 Wn.2d 879, 883, 371 P.2d 541 (1962))).

158 Wn.2d at 752-53 (emphasis added) (citations omitted). As *Ervin* recognized without controversy, a defendant's jeopardy being terminated by acquittal is

---

[1] The majority may have framed the issue this way because that is the primary approach the parties take. However, courts are not confined by the parties' framing of an issue when a controlling precedent exists, as is the case here. *Maynard Inv. Co. v. McCann*, 77 Wn.2d 616, 623, 465 P.2d 657 (1970).

analytically separate from his jeopardy being terminated by dismissal of the jury absent an unforeseeable circumstance such as a hung jury. Today, the majority ignores the distinction.

The majority's blending of two distinct concepts is critical here because it suggests a conflict in our precedent that does not exist. In *Ervin*, we resolved only how *Green*'s implied acquittal holding applies to unable to agree instructions. This is clear because the opinion expressly states that the court is limiting its inquiry to that sole theory. After the *Ervin* court summarized the three ways jeopardy can terminate—i.e., (1) acquittal, (2) final conviction, and (3) dismissal of the jury not in the interests of justice without an unforeseeable event such as a hung jury—we explained that Ervin challenged his retrial only on the first ground. We disclaimed, "*Ervin does not contend that the jury was dismissed without his consent before reaching a verdict or that the discharge of the jury was not in the interest of justice. Rather, Ervin argues that the jury had, in fact, reached* [an implied] verdict in regard to him." *Id.* at 753 n.5 (first emphasis added). The court then analyzed whether a jury's silence on a higher charge after using an unable to agree instruction constitutes an *implied acquittal*, holding it does not. *Id.* at 753-57. This is because jurors are presumed to follow the instructions and, thus, their silence means they did not unanimously agree to acquit, so we cannot infer an implied acquittal. *Id.*

I do not challenge the holding in *Ervin*, and we need not consider whether to overrule that holding or the *Daniels* decisions. My point is that *Ervin* recognized *Green*'s second rationale as an independent method of terminating jeopardy, but then

-6-

expressly acknowledged it would not decide how that method applies to unable to agree instructions. *Id.* at 752-53 & n.5.

In *Daniels* I, the court faced similar circumstances as in *Ervin* and as here but again did not consider *Green's* second rationale. Instead, the court followed only *Ervin's* holding on implied acquittal. *Daniels* I, 160 Wn.2d at 264-65. It reasoned that the "issue before us today is nearly identical to what we considered in *Ervin*" and noted that during oral argument defense counsel "admitted we could find for Daniels on this argument only if we reversed our unanimous decision in *Ervin*." *Id.* at 264 & n.4. Because the defendant thus advocated only an implied acquittal theory, *Daniels* I simply reiterated *Ervin's* reasoning on why there is not an implied acquittal in these circumstances; the court did not analyze how *Green's* second rationale applies to unable to agree instructions. *See id.* at 262-66.[2]

We granted a motion for reconsideration of *Daniels* I after the Ninth Circuit issued *Brazzel v. Washington*, 491 F.3d 976 (9th Cir. 2007). In *Brazzel*, the Ninth Circuit endorsed a lower court's prohibition of a defendant's retrial when the jury was silent on the higher charge while using an unable to agree instruction, holding that *Green's* second rationale forbade the retrial. *Id.* at 981-85. Upon the motion for reconsideration, this court superseded its initial unanimous *Daniels* I decision

---

[2] The *Daniels* I opinion conspicuously lists only two headings for its double jeopardy analysis: "I. There was no implied acquittal terminating jeopardy on Daniels's homicide by abuse charge," and "II. There was no final conviction terminating jeopardy on Daniels's second degree felony murder charge." *Daniels* I, 160 Wn.2d at 262, 265 (capitalization omitted). But as we recognized in *Ervin*, there are *three* distinct methods of terminating jeopardy: acquittal, conviction, and dismissal of the jury without a finding of a manifest necessity for retrial. *See supra* p.6 (quoting *Ervin*, 158 Wn.2d at 753). The absence of a third heading confirms the limits of the holding in *Daniels* I.

-7-

and issued fractured opinions. In the lead opinion, four justices asserted, "We . . . adhere to our prior published opinion," without further explanation. *Daniels* II, 165 Wn.2d at 628 (lead opinion). The lead opinion offered no new analysis but merely reissued the initial *Daniels* I opinion, which rested solely on rejecting an implied acquittal theory. Because a fifth justice concurred with the lead opinion, the result was to uphold the defendant's conviction.[3]

In order for the *Daniels* decisions to hold that unable to agree instructions satisfy *Green*'s second rationale (that after a jury is discharged, a defendant may be retried only upon a finding of a mistrial), it would have been necessary to reexamine our prior case law. Our cases have established that a mistrial may be granted only when the trial judge finds a *manifest necessity* for a new trial. *Ervin*, 158 Wn.2d at 752-53 & 757 n.10; *State v. Linton*, 156 Wn.2d 777, 784-85, 132 P.3d 127 (2006) (lead opinion); *Linton*, 156 Wn.2d at 791 (Sanders, J., concurring); *Jones*, 97 Wn.2d at 162-64; *State v. Connors*, 59 Wn.2d 879, 883, 371 P.2d 541 (1962); *State v. Davis*, 190 Wash. 164, 166-67, 67 P.2d 894 (1937). The lead opinion in *Daniels* II did not examine these cases, providing strong evidence that the court did not announce a rule holding that a jury's silence after using an unable to agree instruction amounts to a manifest necessity for a new trial.

---

[3] Daniels was subsequently granted federal habeas corpus relief. A United States District Court followed *Brazzel* and granted Daniels relief because her double jeopardy clause rights had been violated. *Daniels v. Pastor*, No. C09-5711BHS, 2010 WL 56041 (W.D. Wash. Jan. 6, 2010).

In sum, our prior opinions—*Ervin*, *Daniels* I, and the lead opinion in *Daniels* II upon reconsideration—did not address, much less resolve, the question of how *Green*'s second rationale applies to unable to agree instructions. The court considered only *Green*'s first rationale of implied acquittal, holding a jury does not impliedly acquit by remaining silent when using unable to agree instructions. Whether *Green*'s second rationale prohibits retrial after a jury fails to enter a verdict on a higher charge while using an unable to agree instruction is an issue of first impression before us today. For this reason, we need not engage in an analysis of whether the *Daniels* decisions are incorrect and harmful and must be overruled.

## III

Under the second rationale announced by the United States Supreme Court in *Green*, the State cannot retry Glasmann on the first degree charges. To hold otherwise undermines the purpose of unable to agree instructions and conflicts with controlling precedent on the protections of the double jeopardy clause.

This court adopted the unable to agree instructions in *Labanowski* in 1991. 117 Wn.2d at 423. Our concern was that traditional acquittal first instructions resulted in too many hung juries. *Id.* at 420. We feared that when "unanimity is required, the refusal of just one juror to acquit or convict on the greater charge prevents the rendering of a verdict on the lesser charge and causes a mistrial even in cases where the jury would have been unanimous on a lesser offense." *Id.* We found these mistrials, common under acquittal first instructions, proved too costly. They are "burdensome to defendants, victims, witnesses and the court system itself." *Id.*

They "burden a defendant while allowing the State to benefit from 'dress rehearsals'." *Id.* They "exact[] a heavy toll on both society and defendants by helping to drain state treasuries, crowding court dockets, and delaying other cases while also jeopardizing the interests of defendants due to the emotional and financial strain of successive defenses." *Id.* To avoid such costly mistrials, we adopted the unable to agree instructions, emphasizing that they would make mistrials less likely. *Id.* at 420, 423.

Today, the majority holds when the jury uses the unable to agree instructions and enters a verdict on a lower charge, the result is, ipso facto, a genuine deadlock that justifies a mistrial on the higher charge. This defies *Labanowski*. We adopted the instructions to *reduce* mistrials, but now the majority interprets them to *require* mistrials. While the majority insists this serves "the *Labanowski* efficiency concerns," majority at 11 n.3, it does not address the conundrum created by essentially instructing the jury how to hang itself.[4]

In addition to subverting the reason we adopted unable to agree instructions in the first place, the majority's view—that "the jurors leaving the verdict form blank necessarily meant that they were genuinely deadlocked on the charge," majority at

---

[4] The majority appears to believe its holding will not result in a mistrial unless the State seeks to retry the defendant on a greater charge following reversal of a lesser charge on appeal. *See* majority at 10 n.2, 11 n.3. But, it offers no principled reason why the blank verdict on the higher charge is read differently immediately after trial than after reversal on appeal. Under the majority's logic, it is clear that a mistrial automatically occurs on the higher charge once the jury delivers its verdict in the original trial and a judge has no discretion after that point to deny a motion for mistrial.

10—ignores this court's case law and violates controlling United States Supreme Court precedent.

The United States Supreme Court in *Green* held retrial is prohibited when the trial court dismisses the jury, without the defendant's consent, after the jury failed to deliver a verdict and after the jury "was given a full opportunity to return a verdict and no extraordinary circumstances appeared which prevented it from doing so." *Green*, 355 U.S. at 191 (citing *Wade*, 336 U.S. 684 (holding retrial is permissible only where a manifest necessity exists for doing so)); *see also Price*, 398 U.S. at 328-29 (quoting *Green* and describing its two rationales as discrete and binding). The extraordinary circumstances that *Green* refers to is the same concept as when a manifest necessity makes a new trial permissible, a doctrine first articulated in 1824. *See Wade*, 336 U.S. at 689-90 (relying on *United States v. Perez*, 22 U.S. (9 Wheat.) 579, 579-80, 6 L. Ed. 165 (1824)). This doctrine is black letter law, and the textbook example of its application is the trial judge ordering a retrial after finding a hung jury. *See, e.g., Richardson v. United States*, 468 U.S. 317, 324, 104 S. Ct. 3081, 82 L. Ed. 2d 242 (1984) ("[W]e have constantly adhered to the rule that a retrial following a 'hung jury' does not violate the Double Jeopardy Clause."); *Jones*, 97 Wn.2d at 162-64. This court and the United States Supreme Court have consistently held a hung jury occurs only when the *trial judge exercises discretion* and finds a

high degree of necessity for a new trial because the jury is genuinely deadlocked. *Washington*, 434 U.S. at 505-10; *Jones*, 97 Wn.2d at 162-64.[5]

Applying controlling authority, retrial of Glasmann on the higher charge is prohibited. Many of *Green*'s elements are indisputably satisfied. First, the jury failed to deliver a verdict on the higher charge. It did not deliver an express acquittal, *see* Clerk's Papers (CP) at 56, 60, or an implied acquittal, *see Ervin*, 158 Wn.2d at 753-57; *Daniels* I, 160 Wn.2d at 262-65. Second, the jury was dismissed without the defendant's consent. 9 Verbatim Report of Proceedings (VRP) at 13. Third, the jury was given a full opportunity to return a verdict; there is no suggestion otherwise in the record, and the State conceded at oral argument that this element is satisfied.[6]

Thus, the only remaining element of *Green* is whether there was an "extraordinary circumstance" that prevented the jury from reaching a verdict and

---

[5] The majority asserts that the "core reasoning from *Green* and *Price* does not apply here because those cases did not involve 'unable to agree' instructions." Majority at 9. But, it fails to identify any part of the court's reasoning in *Green* and *Price* that turns on this factual distinction. I fail to see how we can avoid the unambiguous, controlling command from the United States Supreme Court: "[when] the jury was dismissed without returning any express verdict on [the higher] charge and without [the defendant's] consent," and when the jury "was given a full opportunity to return a verdict and no extraordinary circumstances appeared which prevented it from doing so," jeopardy terminates. *Green*, 355 U.S. at 191; *accord Price*, 398 U.S. at 329. Unless the majority is suggesting that a jury given an unable to agree instruction is thereby deprived of a full opportunity to return a verdict—an unlikely proposition—the controlling legal principle is the same. The United States Supreme Court gave no hint that this principle turns on how the jury is instructed. Indeed, in *Ervin* this court recognized the applicability of the *Green* framework even when unable to agree instructions are used. *Ervin*, 158 Wn.2d at 752-53 (citing *Green*, 355 U.S. 184).

[6] *See* CP at 98; VRP at 3-14; *see also* Wash. Supreme Court oral argument, *State v. Glasmann*, No. 88913-9 (Oct. 23, 2014), at 33 min., 55 sec. through 34 min., 45 sec., *audio recording by* TVW, Washington State's Public Affairs Network, *available at* http://www.tvw.org.

would permit a retrial. 355 U.S. at 191. A hung jury is a classic example of an extraordinary circumstance that justifies retrial. *See, e.g., Richardson*, 468 U.S. at 324; *Jones*, 97 Wn.2d at 162-64. This court and the United States Supreme Court have discussed at length the standard for allowing a new trial in such a circumstance, concluding that the standard is that the trial judge must find the jury is genuinely deadlocked. *See Washington*, 434 U.S. at 503-10; *Jones*, 97 Wn.2d at 162-64 (relying on *Washington* and adopting its approach). The majority acknowledges this is the standard but reasons that the "jurors leaving the verdict from blank necessarily meant that they were genuinely deadlocked on the charge" when they followed unable to agree instructions. Majority at 10. The majority reasons this is correct because *Washington* "uses the phrase 'unable to reach a verdict' interchangeably with a jury being 'genuinely deadlocked.'" Majority at 11 (quoting *Washington*, 434 U.S. at 509).

This reasoning is misleading and inadequate. It is misleading because the Court only once initially stated "the trial judge's belief that the jury is unable to reach a verdict" is a proper basis for a mistrial; but then the Court engaged in an extended discussion to establish that the proper standard is that the judge must find genuine deadlock, never again using any other phrase. 434 U.S. at 509-10. It is inadequate because the majority's view cannot account for *Washington*. That case, as well as our opinion in *Jones*, establishes that the determination of whether a manifest necessity has occurred to justify a retrial is solely within the trial judge's discretion, not the jury's. *Washington*, 434 U.S. at 503-17; *Jones*, 97 Wn.2d at 162-64.

In *Washington*, the prosecution sought and was granted a mistrial based on defense counsel's improper comment during opening statements. 434 U.S. at 498. The question presented was simply "whether the record reflects the kind of 'necessity' for the mistrial ruling that will avoid a valid plea of double jeopardy." *Id.* The court took the opportunity to describe the trial judge's nuanced, highly sensitive decision of whether to grant a mistrial. *Id.* at 503-17. The trial judge's decision is sensitive because the defendant's "'valued right to have his trial completed by a particular tribunal'" hangs in the balance. *Id.* at 503 (quoting *Illinois v. Somerville*, 410 U.S. 458, 466, 93 S. Ct. 1066, 35 L. Ed. 2d 425 (1973)). The "reasons why this 'valued right' merits constitutional protection" include that the second prosecution "increases the financial and emotional burden on the accused," "prolongs the period in which he is stigmatized by an unresolved accusation of wrongdoing," and "may even enhance the risk that an innocent defendant may be convicted," such as when the prosecutor uses the first trial as a trial run of his case and adjusts the second case accordingly. *Id.* at 503-04. Because the "danger of such unfairness to the defendant exists whenever a trial is aborted before it is completed," *id.* at 504, the rule is that for the prosecutor to justify a mistrial, "the prosecutor must shoulder the burden of justifying the mistrial," and "[h]is burden is a heavy one," *id.* at 505. "The prosecutor must demonstrate 'manifest necessity' for any mistrial . . . ." *Id.*

The court then provided guidance for trial judges applying the manifest necessity standard. It held that while "necessity" cannot be interpreted in a literal

-14-

sense, the prosecutor must prove, and the trial judge must find, a "high degree" of necessity. *Id.* at 506. The court surveyed various situations in which the question of manifest necessity may arise and then provided guidance on the precise situation before us—how a trial court should decide whether to grant a mistrial for a hung jury. *See id.* at 509-10. In that situation, the court reasoned that "there are especially compelling reasons for allowing the trial judge to exercise broad discretion in deciding whether or not 'manifest necessity' justifies a discharge of the jury." *Id.* at 509. That is because in determining whether a jury is hung, there are sensitive, countervailing values at stake. "On the one hand, if [the trial judge] discharges the jury when further deliberations may produce a fair verdict, the defendant is deprived of his 'valued right to have his trial completed by a particular tribunal.'" *Id.* But, if the trial judge "fails to discharge a jury which is unable to reach a verdict after protracted and exhausting deliberations, there exists a significant risk that a verdict may result from pressures inherent in the situation rather than the considered judgment of all the jurors." *Id.* Thus, the court held that a "trial judge's decision to declare a mistrial when he considers the jury deadlocked is therefore accorded great deference by a reviewing court." *Id.* at 510.

As did the United States Supreme Court, we previously trusted and empowered trial judges to manage the delicate question of when a mistrial must be granted for a hung jury. *See Jones*, 97 Wn.2d at 162-64 (relying on *Washington*, discussing the factors a trial judge may consider when declaring a mistrial for a hung jury, and concluding that "[i]t is well established that a trial judge should be allowed

broad discretion in deciding whether the circumstances justify a discharge of the jury" and that such decisions are reviewed with "[g]reat deference"). That is because, among other good reasons, the trial judge has superior knowledge of the evidence presented in the case; has the best ability to approximate how difficult it would be to resolve disputes in the case; and has the best appreciation of the delicate, countervailing interests that are at stake any time a trial is aborted and restarted. *See id.*

Today, the majority takes that role away from the trial judge. The majority holds that a jury following an unable to agree instruction may hang itself. Under the majority's view, the jury may, without unanimity, declare itself finished deliberating on a charge. This is not the system of justice that *Washington* or *Jones* envisions. It is the trial judge's decision whether the state has shouldered its heavy burden to demonstrate to the trial judge, who exercises his or her wide discretion in the circumstances of the case he or she knows best, that a manifest necessity exists to justify a new trial. Appellate courts review this decision with "great deference." *Washington*, 434 U.S. at 510; *Jones*, 97 Wn.2d at 163.

The majority's rule undermines the trial court's ability to exercise its discretion. *Washington* recognizes that the trial judge may need to push back on the jury's declaration that it is unable to agree because "if he discharges the jury when further deliberations may produce a fair verdict, the defendant is deprived of his 'valued right to have his trial completed by a particular tribunal.'" 434 U.S. at 509. The jury is in no position to balance the competing interests. It is the trial judge who

may, with knowledge of the particular case, require the jurors to continue deliberating, if the judge suspects they have too quickly decided they are unable to agree and thus have violated the defendant's right to have one complete trial. Doubtlessly such decisions are delicate and difficult, but that is precisely why they are trusted to the sound discretion of the trial judge.

In light of the trial judge's critical role under *Washington* and *Jones*, the majority's analysis of whether a manifest necessity exists to retry Glasmann on higher charges is unpersuasive. The majority reasons that the "jurors leaving the verdict form blank necessarily meant that they were genuinely deadlocked on the charge" when they followed unable to agree instructions. Majority at 10. That is not enough.

For starters, this court has already said precisely the opposite thing. After this court in *Ervin* concluded the jury had not impliedly acquitted the defendant, we explained the relationship between an implied acquittal and a manifest necessity for a new trial:

> This is not to decide, however, that the jury's inability to agree on the greater charges is the equivalent of a mistrial on those charges. Unable to agree instructions instruct the jury to end deliberations on a greater charge and move to a lesser charge once disagreement on the greater charge has been established. Comparatively, state and federal jurisprudence establishes that a jury must be "genuinely deadlocked" before a mistrial can be declared. *Therefore*, an "unable to agree" verdict (or nonverdict) *is not the equivalent* of a "mistrial" on the charges upon which the jury was unable to agree.

158 Wn.2d at 757 n.10 (emphasis added) (citations omitted) (citing *Washington*, 434 U.S. at 509; *Jones*, 97 Wn.2d at 164). The majority has no answer to this passage.

-17-

It does not suggest that *Ervin* is incorrect and harmful in recognizing the difference between a jury that is unable to agree and one that is genuinely deadlocked. Yet, today, the majority holds precisely the opposite of *Ervin*, stating that the "jurors leaving the verdict form blank necessarily meant that they *were* genuinely deadlocked on the charge." Majority at 10 (emphasis added).

Moreover, the fundamental flaw in the majority's analysis is that *Washington* and *Jones* aptly demonstrate, and for good reasons, that the finding of a manifest necessity for a new trial is inherently a question for the trial judge. The jury does not get to make that sensitive choice. While the jurors' informing the trial judge that they are unable to agree (either by a note issued during ongoing deliberations or by attempting to return a blank verdict on a higher charge) certainly is a relevant factor in the judge's decision, whether to declare a mistrial is ultimately a judicial decision. *See Jones*, 97 Wn.2d at 164. Here, the trial judge did not find a manifest necessity for a new trial after the jury returned its verdict. Nor did the State even seek a mistrial on the higher charge. As far as I can tell on appellate review, the circumstances of this case do not suggests there was a manifest necessity for a new trial.[7] But in any event, that is not an inquiry for an appellate court in the first instance. There is no exercise of discretion here for us to review. Thus, under *Washington* and *Jones*, the State has not shouldered its heavy burden to prove a manifest necessity for a new trial by simply pointing to the implication from the

---

[7] The jury deliberated for three hours and four minutes. CP at 98. The jury did not ask the court questions while deliberating. *Id.* The record does not reflect that anything out of the ordinary occurred during the deliberations. *Id.*; 9 VRP at 3-14.

jury's blank verdicts on the first degree charges that they were unable to agree. The trial judge, not the jury, must make the ultimate finding of manifest necessity to justify a retrial.

## IV

I would recognize that the issue in this case is one of first impression for this court and does not require us to overrule any precedent. I would hold that *Green*'s second rationale prohibits a retrial of Glasmann after the jury was silent on the higher charge using unable to agree instructions and that there was no judicial finding of a manifest necessity for a new trial as required under *Washington* and *Jones*. For these reasons, I dissent.

_Stephens, J._

_Goden McCloud, J._

_Fairhurst, J._